Roy Lee SELLERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 28293.

Court of Criminal Appeals of Texas.

June 27, 1956.

On Rehearing Oct. 31, 1956.

Howze & Howze, by John Howze, Monahans, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The appeal is from a conviction for violation of Art. 1436b, Sec. 1, V.A.P.C., the indictment alleging that appellant unlawfully entered upon premises occupied and

controlled by Charles W. Ward with the intent "to take mercury from and out of a gas meter then and there located upon said premises without the consent of the said Charles W. Ward and with the intent then and there to deprive the said Charles W. Ward of the value of said mercury and to appropriate the same to the use and benefit of him, the said Roy Lee Sellers."

The punishment was assessed at two years in the penitentiary.

The statute, enacted by the 47th Legislature in 1941, p. 788, Ch. 490, created a new offense of the grade of felony cumulative of all other laws and specifically provides that a violation thereof may be prosecuted irrespective of whether or not the act complained of may constitute some of the essential elements of other or different penal offenses.

The offense defined is akin to burglary with intent to commit theft, but does not under its terms require that the elements of either burglary or theft be alleged or proved.

The entry of any premises or gas pipe line right of way with intent to steal or carry away any mercury from out of a gas meter, without the consent of the owner, is made an offense. "Steal" being defined to mean "to take wrongfully and without just claim of authority any mercury".

While the indictment could have been more aptly drawn, no question as to its sufficiency has been raised either in the trial court or by appellant's able counsel in his brief filed in this court.

 The validity of the statute is not questioned, and we are inclined to the view that neither the statute nor the indictment is void.

The evidence shows that Charles W. Ward was Plant Superintendent for Stanolind Oil and Gas Company at the South Fullerton Gasoline Plant. The plant was owned by several companies and was operated by Stanolind Oil and Gas Company in connection with the acquisition and gathering of casing head gas from various wells in Andrews County.

Mr. Ward testified that several companies owned leases from which gas and oil were produced in the same operation; that the mixture went through a separator which separated the liquid crude oil from the gas; that a meter was on the discharge side of the separator, which was an automatic device with its own control which records the amount of gas that passes through it; that the owners of the leases were in charge of the operation until the gas was separated from the oil, when Stanolind Oil and Gas Company, who owned the meters, took over; and that the care, custody, control and management of the leases and the property located thereon, insofar as the gathering of gas was concerned, had been delegated to him.

Mr. Ward testified that on September 27, 1954, he found that mercury was missing from some of the gas meters located on various leases owned by his employers and a list of such leases was made the following day. Refreshing his memory from the list he made, Mr. Ward testified:

"A. On September 27th at 8:30 P.M. on Section 29 in Block 13 of University lands of Andrews County, we lost mercury. The same is true at 9:00 P.M. when another meter on that same lease, two of them. And another one on Block 19 of Section * * * or Block 13, Section 19, another meter. Those were on the 27th.

"Q. What time of the night or day was the last that was lost? A. The last one was lost at 12:30 A.M. on the morning of the 28th.

"Q. Now would you explain to the jury, if you will Mr. Ward, how you are able to tell what time of the night or day the mercury was taken from the meters? A. These meters have a circular chart on them about twelve inches in diameter. And on

this chart is marked in an inked line the amount of gas that's indicated, that flowed through that meter. When the mercury is withdrawn, those lines immediately go down to zero, and there is no further registration. So by checking the time that these charts went to zero, we know at what time the mercury was gone. * * *

"Q. All right, sir. Now would you tell us where, in relation to your gasoline plant there out at South Fullerton these leases that you have testified about are located. A. Some of them are located east of the plant and some north of the plant.

"Q. And will you state whether or not all of them are in Andrews County, Texas? A. They are."

Appellant's confession was introduced in evidence, reading in part:

"On the evening of September 27, 1954, me and Harold Otis Parker started over into Texas where we knew where 3 meters were on a tank battery. We were in my 1951 green Plymouth 2 door which has a Texas License plate on it. We went to the 3 meters which was in Andrews County, Texas and we parked out car on the side of the road and walked out to the meters to see if we could get any mercury out of the meters. We unscrewed a small plug from the bottom of a small tube and drained the mercury into a coke bottle, we then poured the mercury from the coke bottle into a quart thermos bottle which I had carried out with me. After we had got all the mercury from the three meters here we went into Andrews, Texas and then we went out the Kermit Highway and turned off onto the Goldsmith to Frankel City Highway and went north and found one meter to the west of the highway. We walked out to that meter and drained the mercury out of it the same way that we had the first three. We then

went to Frankel City and on out thru or by the Phillips Gasoline Plant and turned west to the Fullerton Camp, and turned south and found one meter on the west side of the road. We took the same coke bottle we had been using and drained the mercury out of the meter into the coke bottle. We then poured this mercury into the thermos bottle. We then drove to the Eunice Highway and drove into Eunice, New Mexico. We got into Eunice about midnight or soon after as well as I remember. No one gave us permission to take this mercury and we knew that it did not belong to us.

"We put the mercury in my house in the kitchen cabinet until Thursday morning. On Thursday morning I put the mercury into my car and hauled it to Eagle Pass, Texas. I went to Eagle Pass by myself and sold the mercury to the Eagle Iron and Metal Company for $2.00 per pound. (We had mixed this mercury with some other mercury that we had stolen near Eunice, New Mexico.)"

Appellant does not question the rule that when it is shown that the crime charged has been committed by someone, the confession of the accused that he committed the offense charged is sufficient. He urges, however, that his confession is not unequivocal, as required by such rule of law.

While the confession does not describe the premises which appellant and his companion Parker entered, and does not describe the four meters from which they took mercury as being gas meters or as belonging to Charles W. Ward or to Stanolind Oil and Gas Company, appellant clearly confessed that he and Parker came to Andrews County and entered the premises where mercury was to be found in meters for the purpose of taking or stealing such mercury.

The leases where the mercury was removed were not identified therein but we

find the confession sufficiently definite to show that one or more, if not all of the four meters from which mercury was removed was on premises under control of Charles W. Ward as Plant Superintendent for Standlind Oil and Gas Company at the South Fullerton Gasoline Plant in Andrews County.

The evidence is deemed sufficient to sustain the conviction and we find no reversible error.

The judgment is affirmed.

DAVIDSON, Judge (dissenting).

I cannot agree to the affirmance of this case for two reasons: (a) The indictment is fatally defective in that it fails to charge a violation of the statute under which the prosecution was brought, and (b) the statute is so vague, uncertain, and ambiguous as not to create a criminal offense and is therefore void.

The statute under which this prosecution is brought is as follows:

"Any person who shall enter upon any premises or gas pipe-line right of ways with intent to steal or carry away without the consent of the owner, or with intent to aid or assist in stealing or so carrying away any mercury from and out of any gas meter or any device by or through which the flow, movement, or pressure of gas is measured or regulated, or which is capable of being used to measure, regulate or control the movement of gas, shall be guilty of a felony and upon conviction shall be punished by confinement in the penitentiary for not less than one (1) year nor more than five (5) years, or by confinement in the county jail for not less than ninety (90) days nor more than two hundred (200) days, or shall be fined not less than One Hundred ($100) nor more than Five Hundred Dollars ($500), or by both such fine and imprisonment.

"'Gas' as that term is used herein means natural gas or artificial gas or a combination or mixture of any such gases."

The indictment in this case, in the charging portion thereof, reads as follows:

"* * * did then and there unlawfully enter upon premises then and there occupied and controlled by Charles W. Ward with the intent then and there *to take mercury* from and out of a gas meter then and there located upon said premises without the consent of the said Charles W. Ward and with the intent then and there to deprive the said Charles W. Ward of the value of said mercury and to appropriate the same to the use and benefit of him, the said Roy Lee Sellers * * *." (Emphasis supplied.)

Nowhere therein is it alleged that the entry upon the premises was with the fraudulent intent to steal or commit the crime of theft of the mercury. Nowhere therein is it alleged that the mercury intended to be taken was the property of or in the possession of Ward or any other person. There is an entire absence of any allegation that Ward could give or withhold consent to the taking of the mercury or how he might or would be injured by being deprived of the mercury.

If the state was relying upon the statute as making it unlawful for one to enter upon the premises of another for the purpose of committing theft of mercury from a gas meter, then, of necessity, the indictment must allege the essentials which constituted the unlawful act intended, among which essentials would be the fraudulent taking, the possession and ownership of the mercury, and the want of consent of the owner to the taking.

The indictment contains none of these essentials and cannot therefore be held to be sufficient to allege that theft of the mercury was intended by the entry. Branch's P.C., Sections 2425, 2433, and 2451.

The indictment alleges only that the entry was made with the intent to "take"—and this, without regard to whether such taking was or would be lawful or unlawful. The indictment not only fails to charge a violation of the statute mentioned but it also fails to charge a violation of any other law.

Being fatally defective, the indictment does not and can not support this conviction.

A valid indictment is necessary to a valid conviction, without which the latter cannot exist.

Now, as to the statute, itself, the first peculiar and outstanding feature thereof is that it punishes and makes unlawful the intent to do a lawful act—or, at least, an act not unlawful under the law. In this connection it will be noted that the act attempted to be made unlawful by the statute consists of two elements. These are: (a) the entry on the premises, and (b) the intent to steal mercury from a gas meter.

The concurrence of these two elements must exist in order for the statute to be violated.

The word "steal," as used in the act, does not and cannot have the meaning given to that term under the law of theft, Art. 1425, P.C., wherein it is provided that the word "steal," as used in the Penal Code, includes the acquiring of property by theft, because, under the instant statute, the legislature saw fit to give to the word "steal" a special meaning and one quite different from that given under the general law of theft.

As applicable to the prosecution, here, the word "steal" means "to take wrongfully and without just claim of authority".

The fraudulent intent necessary to constitute the crime of theft is absent in this case, as are, also, all the other essentials constituting the crime of theft.

So, then, there is no escape from the conclusion that neither by the act, itself, nor by any other law of this state is it made unlawful "to take wrongfully and without just claim of authority" any mercury from a gas meter. If the taking was rightful as distinguished from wrongful, or under a just claim of authority as distinguished from without just claim of authority—whatever be the meaning of those words as used in the statute—no unlawful act has been committed.

It is apparent, therefore, that the act does not prohibit the taking of the mercury but, to the contrary, the only limitation upon the taking of the mercury is whether it was done rightfully or wrongfully, or with or without just claim of authority.

Therefore, for the act of taking the mercury to be unlawful it is and would be necessary to adjudicate the title to the mercury as in a civil action and not a criminal case.

So we have a criminal statute which makes unlawful the intent to do an act which is not unlawful, itself, and which becomes so only after the title to the property has been adjudicated.

The statute is absolutely void for uncertainty and ambiguity.

My brethren pass over the sufficiency of the indictment and the validity of the statute because the appellant's counsel did not raise these matters in the trial court or in this court.

If the time has come when this court, by its judgment, permits an accused to go to the penitentiary upon an invalid indictment and a void statute because his counsel did not so contend in the trial court or in this court, I want no part of it.

It is the appellant who is going to the penitentiary under the mandate of this court, and no one else.

If the indictment is invalid, or the statute void, we ought to say so, without hesitation.

I respectfully dissent.

**818**

**On Motion for Rehearing**

MORRISON, Presiding Judge.

■ Our original opinion did not discuss the admissibility of that portion of the appellant's confession which related to other offenses. It read: "We had mixed this mercury with some other mercury that *we had stolen near Eunice, New Mexico.* I sold the Eagle Iron & Metal Co. at Eagle, Texas, 417 pounds of mercury that we had stolen (*in Lea County, New Mexico and*) Andrews County, Texas." This portion of the confession was objected to on the grounds that there was no issue as to identity or system and that the State's prima facie case would be established without the inclusion of any part of the confession in which the accused admitted committing extraneous crimes. We have concluded that the trial court fell into error in admitting that portion of the confession.

In Young v. State, 159 Tex.Cr.R. 164, 261 S.W.2d 836, 837, we said:

"The general rule in all English speaking jurisdictions is that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions.

"Watson v. State, 146 Tex.Cr.R. 425, 175 S.W.2d 423, supports appellant's position that the State may not, in developing its case in chief, prove extraneous offenses committed by the defendant, though involving a similar intent to the transaction for which he is on trial.

"We conclude that the trial court fell into error when he permitted proof of extraneous offenses during the development of the State's main case."

■ Upon closer examination of the record in this case, the writer has concluded that the State failed to show with that degree of certainty which the law requires and the facts would permit that the mercury which the appellant admitted having taken in Andrews County was the same mercury which Mr. Ward lost.

For the reasons pointed out, the appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment is now reversed and the cause remanded.

WOODLEY, Judge (dissenting).

The grounds upon which reversal was sought were disposed of upon original submission, and my views are stated in the majority opinion.

On rehearing these contentions are re-urged, and in addition the views of Judge DAVIDSON as to the invalidity of the statute and the insufficiency of the indictment are adopted and urged.

The writer is unable to agree with Judge DAVIDSON that the statute is invalid or the indictment is insufficient.

The ground upon which Presiding Judge MORRISON has decided that the conviction should be reversed was not presented by appellant's able counsel in his brief on original submission or in his motion for rehearing, and is not tenable under the facts.

That portion of the confession which dealt with the theft of mercury in New Mexico was offered and admitted to show system, scheme and intent. The intent of appellant in entering the rights of way in Texas was alleged to be for the purpose of removing mercury from gas meters. The mercury from both sources was mixed and sold. The confession as to the taking of the New Mexico mercury was admissible as showing a conspiracy and scheme to unlawfully acquire mercury from gas meters and sell it. It explained the difference in the amount of the mercury removed from the premises described in the indictment and the amount sold by appellant in Eagle Pass.

I respectfully dissent from the granting of appellant's motion for rehearing.