Oscar **GONZALEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 42659.

Court of Criminal Appeals of Texas.

May 13, 1970.

J. H. Fugate, Jr., Kingsville, for appellant.

F. B. Lloyd, Jr., Dist. Atty., Alice, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

WOODLEY, Presiding Judge.

This is an appeal from an order revoking probation. The sole question to be decided by this court in such cases is whether the trial judge abused his discre-

tion in revoking probation previously granted.

On November 30, 1965, appellant entered a plea of guilty to an indictment charging him with violation of Art. 1436b Vernon's Ann.P.C. enacted by the 47th Legislature (Acts 1941, Ch. 490, p. 788), approved and effective June 13, 1941.[1]

The portion of said Act under which appellant was convicted on November 30, 1965, and for violation of which on the night of March 4, 1969, his probation was revoked, reads:

"Section 1. Any person who shall enter upon any premises or gas pipe-line right of ways with intent to steal or carry away without the consent of the owner, or with intent to aid or assist in stealing or so carrying away any mercury from and out of any gas meter or any device by or through which the flow, movement, or pressure of gas is measured or regulated, or which is capable of being used to measure, regulate or control the movement of gas, shall be guilty of a felony and upon conviction shall be punished by confinement in the penitentiary for not less than one (1) year nor more than five (5) years, or by confinement in the county jail for not less than ninety (90) days nor more than two hundred (200) days, or shall be fined not less than One Hundred Dollars ($100) nor more than Five Hundred Dollars ($500), or by both such fine and imprisonment.

" 'Gas' as that term is used herein means natural gas or artificial gas or a combination or mixture of any such gases.

"Sec. 2. It is the finding and declaration that the public health, safety, and welfare require that title to any mercury should be transferred by a written bill of sale.

" 'Mercury' as that term is used herein means the common mineral know by that term not in combination with any other liquid, fluid, or mineral.

\*    \*    \*    \*    \*    \*

"Sec. 4. This Act shall be cumulative of all laws of the State and any violation hereof may be prosecuted, irrespective of whether or not the acts complained of may constitute some of the essential elements of other or different offenses against the penal laws of this State; and for the purposes of this Act the word 'steal' shall mean to take wrongfully and without just claim of authority any mercury, and the word 'steal' need not be defined in any indictment for the prosecution of any offense hereunder.

"Sec. 5. If any section, paragraph, sentence, clause, or word of the Act is held to be unconstitutional, the remaining portions of the same nevertheless shall be valid and the Legislature declares that the Act would have been enacted without such unconstitutional portion."

Though the question was not raised, the constitutionality of this portion of Art. 1436b, supra, was upheld by this court without discussion, over a vigorous and well reasoned dissent, in Sellers v. State, 163 Tex.Cr.R. 560, 294 S.W.2d 813.[2]

The condition of probation which was alleged to have been violated was that ap-

---

1. The emergency clause reads: "The fact that at the present time and in the immediate past owners and operators of gas properties in this State are and have been suffering an annual loss of many thousands of dollars because mercury has been stolen, and that in attempting to curtail this loss it has become necessary for operators to patrol their properties at night and other times and otherwise expend large sums of money,

creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read in each House on three several days be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

2. Section 3 of said Art. 1436b was amended and Sections 3(a) and 3(b) were

pellant "commit no offense against the laws of this State or any other State of the United States of America."

■ Appellant's contention that the court abused its discretion, because the state's application alleging violation of the condition of probation that he commit no offense against the laws did not allege a violation of law or any other legal ground to revoke his probation, is overruled.

Though the allegations of the motion to revoke probation did not strictly comply with the requirements of an indictment or follow the wording of Section 1 of Art. 1436b, supra, such allegations were sufficient to give notice to the probationer of the offense against the laws of this state which would be relied upon to show that the terms of his probation had been violated.

The remaining contention is that the court abused his discretion in revoking probation because there is neither direct nor circumstantial evidence to sustain the material allegations contained in the state's application to revoke probation. Specifically it is contended (1) that there is no evidence that Mobil Corporation is in fact an incorporated company; (2) no evidence from which it could be inferred that appellant actually entered upon the premises; (3) the evidence does not necessarily show that the mercury tested came from the Brooks County meters; (4) no evidence to the effect that the defendant did not have permission or consent to enter upon the premises; and (5) a reasonable hypothesis of the case is that an employee removed the mercury from the meters.

Viewed from the standpoint most favorable to the court's finding, the evidence reflects the following:

Some 98 pounds of mercury, with a trace element of gold, such as Mobil Oil Corporation had used in its meters since 1964, was drained from 14 meters on the premises of said corporation in Brooks County on the night of March 4, 1969.

Ten of these meters were test meters used once a month by the lease operator to test his wells. The other four were used to indicate the pressure of flow of gas in pipe lines. From the charts it was shown that the mercury was drawn from two of the four meters about 11 P.M. and from the other two about midnight.

A jug of mercury, a sample of which was later found to be mercury with a trace of gold used by Mobil Oil Corporation since 1964 in its meters, was found the

---

added in 1963 (Acts 1963, Ch. 426) following the decision of this court in Marney v. State, 168 Tex.Cr.R. 567, 330 S.W.2d 623, declaring Section 3 of the original act unconstitutional. The emergency clause, which did not become effective, recited that thefts of mercury had increased noticeably since such decision.

The amended Art. 1436b was again amended by the 60th Legislature (Ch. 269, p. 595, approved May 22, 1967, effective May 23, 1967) the emergency clause again noting that the thefts of mercury were increasing in many areas of the state due to the difficulty of obtaining evidence of *illegal transportation* of same. As amended in 1967, Sections 3 and 3(a) read:

"Section 3. Any person who may be found in any county in this state with more than one (1) pound of mercury in his possession and who has not in his possession a bill of sale, or other written evidence of title to said mercury and is unable to produce such evidence without unnecessary delay, shall be guilty of a felony, and upon conviction thereof, shall be confined in the penitentiary for a term of not less than one (1) year nor more than five (5) years, or shall be confined in the county jail for not less than ninety (90) days nor more than two hundred (200) days, or shall be fined not less than One Hundred Dollars ($100) nor more than Five Hundred Dollars ($500), or both such fine and jail imprisonment.

"Section 3(a). It shall be prima facie evidence that a person is illegally in possession of mercury in excess of one (1) pound if at such time he does not have in his possession a bill of sale or other written evidence of title to such mercury and is unable to produce such evidence without unnecessary delay."

next morning by appellant's kinsman Leopoldo De La Garza, a junkman, at his place of business in Premont.

De La Garza testified that no one brought it to him; he had not seen it before, and did not know how it got there. He further testified:

"Q. What did you do with that jug of mercury?

"A. I *divided that in three parts* and took it to the junk yard, * * *" in Corpus Christi. He asked the man if he would buy it and he said yes; "I gave it to him for whatever he could pay for it."

The man said the mercury weighed 80 pounds and gave him $200.00 for it.

On March 6, 1969, De La Garza brought the jug of mercury, a sample of which was later identified as mercury with a trace of gold such as used by Mobil Oil Corporation in its meters, to Industrial Salvage Company in Corpus Christi and offered to sell it. Blackie Segovia, an employee, weighed the jug of mercury and found it to be 80 pounds and paid De La Garza $2.50 per pound, a total of $200.00 for it.

Either the same day or the next day Segovia turned over the jug of mercury he had purchased from De La Garza to Tom Goates. A sample of such mercury was delivered by Goates to Jess Sweeten, Investigator for Mobil, who delivered it to Donald E. McAlpin, Chief Spectrographer for Southern Spectrographic Laboratory in Dallas, who checked it for gold content and determined that it contained sixty parts gold per million and would be Mobil Oil Corporation mercury.

Appellant's connection with the mercury removed from the meters arose upon the further testimony of the witness De La Garza:

"Q. Now, did you, after you got the money for the mercury, did you go back to Premont?

"A. Yes, sir.

"Q. All right. Did you later on have the occasion to see Oscar Gonzalez?

"A. Yes, sir.

"Q. And that's this same man sitting right here, is that correct?

"A. Yes, sir.

"Q. Are you related to Oscar Gonzalez?

"A. Yes, sir.

"Q. Now, did you have a conversation with Oscar Gonzalez about any mercury?

"A. Not before, no sir.

"Q. Well, after you got back from Corpus Christi.

"A. Yes, sir, I gave him $90. He said they belonged to him.

"Q. All right. Did Oscar Gonzalez ask you anything about the mercury?

"A. Just the amount the jug weighed, the weight of the jug.

"Q. Did he tell you that it was his mercury?

"A. That's what he said. I don't know.

"Q. He said it was his mercury, is that right, and wanted to know how much it weighed?

"A. Yes, sir.

"Q. All right. Did he ask you for any money?

"A. Before?

"Q. No, after this, when you were talking about mercury.

"A. Yes. I told him that was what was left, $90, and I gave them to him.

"Q. You paid him the $90, is that right?

"A. Yes, sir, I gave him the money.

"Q. Did you have any other conversation with Oscar Gonzalez about the mercury?

"A. I didn't see him after that."

█ As to appellant's contention that the court abused his discretion in revoking his probation because there was no . evidence that he did not have permission or consent *to enter upon the premises*, attention is directed to the fact that consent to enter the premises is not necessarily an element of the offense and the statute is violated if the person enter upon the premises with intent to steal *or* carry away without the consent of the owner *or* with intent to aid or assist in stealing *or* so carrying away any mercury from and out of any gas meters,—"steal" as used in the act meaning "to take wrongfully and without just claim of authority any mercury * * *." (Sec. 4)

The state relied upon circumstantial evidence. Neither the hypothesis that the mercury containing a trace of gold was not Mobil mercury, nor that the mercury which appellant claimed came from premises other than the premises of Mobil Oil Corporation in Brooks County from which almost a hundred pounds of such mercury was removed the night before it was divided into three parts and 80 pounds sold in Corpus Christi, impresses us as a reasonable hypothesis which was not excluded.

█ Bearing in mind that a proceeding to revoke probation is not a criminal trial[3]; the statute requiring that the testimony of an accomplice be corroborated does not apply and the uncorroborated testimony of an accomplice may be sufficient to revoke probation[4]; the court may accept a part of the testimony of a witness and reject other portions of his testimony; and that proof by circumstantial evidence

that the probationer was a principal or an accomplice would be sufficient to sustain the court's finding that the probationer committed the acts constituting violation of Art. 1436b, Sec. 1, V.A.P.C., we hold that no abuse of discretion on the part of the trial judge in revoking appellant's probation is shown.

The judgment is affirmed.

ONION, Judge (dissenting).

As duly noted by the majority, the basis for the revocation of appellant's probation is an alleged violation of Section 1 of Article 1436b, V.A.P.C., the constitutionality of which was upheld without discussion in Sellers v. State, 163 Tex.Cr.R. 560, 294 S. W.2d 813, "over a vigorous and well reasoned dissent." And while observing that the allegations of the motion to revoke did not comply with the requirements of an indictment or even follow the wording of Section 1 of Article 1436b, supra, the majority held, without setting out such allegations, they were sufficient to give notice to the appellant of the offense which would be relied upon to show a violation of a probationary condition. Then the majority proceeds after a review of the evidence to hold, for the first time in this state, that the uncorroborated testimony of an accomplice witness, *which does not even make out a complete case against the appellant,* is sufficient to authorize a revocation of probation. I cannot agree.

On November 30, 1965, appellant entered a plea of guilty before the court to the offense of entering premises with intent to steal mercury. See Article 1436b, Sec. 1, V.A.P.C. His punishment was assessed at five years, but the imposition of the sentence was suspended and the defendant was placed on probation subject to certain conditions of probation.

---

3. Gossett v. State, 162 Tex.Cr.R. 52, 282 S.W.2d 59; Wilson v. State, 156 Tex. Cr.R. 228, 240 S.W.2d 774.

4. Dunn v. State, 159 Tex.Cr.R. 520, 265 S.W.2d 589; Smith v. State, 160 Tex.

Cr.R. 438, 272 S.W.2d 104; McDonald v. State, Tex.Cr.App., 393 S.W.2d 914; Soliz v. State, 171 Tex.Cr.R. 376, 350 S.W.2d 566.

Among the conditions of probation was the requirement that the appellant shall "(1) commit no offense against the laws of this State or any other State or of the United States of America."

On May 29, 1969, the State filed a motion to revoke appellant's probation alleging that he had violated his probation in the County of Brooks and State of Texas and further alleged that "on or about the 4th day of March, 1969, Oscar Gonzalez did then and there enter upon the premises of Mobil Oil Corporation, an incorporated Company, without the consent of Mobil Oil Corporation, the owner of said premises, with the intent to steal any mercury from and out of any gas meter by or through which the flow, movement, or pressure of gas is measured or regulated, or which is capable of being used to measure, regulate or control the movement of gas."

On June 20, 1969, a hearing on said motion was had following which the court revoked appellant's probation and pronounced sentence.[1] On the same date notice of appeal was given.

The appellant contends there was insufficient evidence to show a violation of probation and the court abused its discretion in revoking probation.

Leopoldo De La Garza testified he was a "junkman" in Premont, Jim Wells County. On the morning of March 5, 1969, he discovered a jug of mercury at his place of business and did not know how it "got there." He related he took the same to a salvage yard in Corpus Christi and received $200.00 for eighty pounds of mercury. De La Garza testified that *after* his return from Corpus Christi (the time being unspecified) the appellant, Oscar Gonzalez,

told him the mercury was his and he gave the appellant $90.00 which was all that was left of the $200.00 at the time.

It was stipulated that Blackie Segovia, an employee of the Industrial Salvage Company in Corpus Christi, would testify that De La Garza brought a jug of mercury to him on March 6, 1969, at his place of employment and that the mercury weighed 80 pounds and he paid De La Garza $200.00; that on the same day or the next day he turned the jug of mercury over to Tom Goates. It was further stipulated that Tom Goates would testify that he took the jug of mercury received from Segovia and turned it over to Jess Sweeten.[2]

Jess Sweeten, an investigator for the Mobil Oil Company and Mobil Pipe Line Company, testified that he took about a two pound sample of the mercury he had received from Goates and turned such sample over to Donald McAlpin, an independent chemist, in Dallas.

McAlpin, the chief spectrographer for Southern Spectrographic Laboratory, testified he received a little less than half a pound of mercury from Sweeten to determine if the sample contained any gold. He explained that around 1964 Mobil Oil Company started marking their mercury by adding gold as a trace element and stated that if "any mercury came into the lab with gold in it we would *suspicion* Mobil Oil Company mercury." He testified that Signal Oil and Gas Company used silver as a tracer, but he did not know what Texaco, Gulf, Humble and other companies used as a tracer; that mercury with gold as a tracer was used by Mobil Oil throughout Texas and the United States. McAlpin related that his chemical analysis showed that the

---

1. In such sentence the court found that the appellant had violated his probation in the following words: "[S]aid Defendant on or about March 4, 1969 did enter upon the premises of Mobil Oil Corporation, without the consent of Mobil Oil Corporation, with intent to steal any mercury from and out of any gas meter by or

through which the flow, movement or pressure of gas is measured or regulated."

2. Neither of the stipulations mentioned contained a waiver by the appellant of the appearance, confrontation and cross-examination of the witnesses.

mercury sample delivered to him contained gold.[3]

It was shown that mercury containing a trace of yellow color had been placed in 14 meters on the Mobil Oil Company premises at the La Gloria Plant in Brooks County, Texas; that the mercury in all 14 meters, being approximately 98 pounds, was discovered missing on March 5, 1969; that the charts at each meter reflected the mercury had been drained or removed at approximately midnight on March 4, 1969; that the mercury had been taken without consent or permission.

If Section 1 of Article 1436b is constitutional, then it was established that an offense was committed by someone. There was, however, no direct evidence that it was committed by the appellant. There was no showing that the appellant was ever in Brooks County or had been at or near or on the premises in question at any time. No one placed appellant in unexplained possession of recently stolen property.

The only evidence linking appellant with the missing mercury is the statement of the man (De La Garza) to whom the mercury sold in Corpus Christi was traced. Such witness was an accomplice witness as a matter of law and his testimony did not even make out a complete case against the appellant or sustain the allegations of the motion to revoke. Still further, the proof did not establish that the mercury traced to De La Garza belonged exclusively to Mobil Oil Company and no other company or person, and even if it did, there is no proof that the mercury came from the premises in Brooks County as alleged and not from some other Mobil Oil premises in Texas or elsewhere in the United States. No effort was made to show that the mercury missing from the Brooks County operation was the only mercury recently reported missing in Texas or elsewhere.

It is true that this Court has consistently held that a hearing to revoke is not a trial in a constitutional sense. See Wilson v. State, 156 Tex.Cr.R. 228, 240 S.W.2d 774; Ex parte Gomez, Tex.Cr.App., 241 S.W.2d 153; Jones v. State, 159 Tex.Cr.R. 24, 261 S.W.2d 317; Ex parte Bruinsma, 164 Tex. Cr.R. 358, 298 S.W.2d 838, cert. den., Bruinsma v. Ellis, 354 U.S. 927, 77 S.Ct. 1386, 1 L.Ed.2d 1439; Cooke v. State, 164 Tex.Cr.R. 320, 299 S.W.2d 143; Gorman v. State, 166 Tex.Cr.R. 633, 317 S.W.2d 744; Leija v. State, 167 Tex.Cr.R. 300, 320 S. W.2d 3; Stratmon v. State, 169 Tex.Cr.R. 188, 333 S.W.2d 135.

Against this background this Court has held that the revocation proceedings need not be formal, Dunn v. State, 159 Tex.Cr. R. 520, 265 S.W.2d 589, and has on occasion relaxed the rules of evidence applicable to a trial on the merits. In Smith v. State, 160 Tex.Cr.R. 438, 272 S.W.2d 104, the uncorroborated confession of the probationer was held sufficient to sustain revocation. In Dunn v. State, supra, it was held that former Article 718, Vernon's Ann.C.C.P., 1925 (now Article 38.14) providing that a "conviction cannot be had upon the testimony of an accomplice unless corroborated" has no application to a revocation of probation hearing. See also Soliz v. State, 171 Tex.Cr.R. 376, 350 S.W.2d 566; McDonald v. State, Tex.Cr.App., 393 S.W.2d 914; Hulsey v. State, Tex.Cr.App., 447 S.W.2d 165. In each of these cases, unlike the case at bar, the accomplice witness was present at the time of the crime, was an eye witness thereto, and his testimony made out a complete case against the probationer. And in Hulsey, supra, the accomplice's testimony was fully corroborated. The majority fails to note this difference.

Since the earlier decisions of this Court concerning the nature of the revocation proceedings, it is now clear that while a state is not constitutionally required to pro-

---

3. It is interesting to note that Section 2 of Article 1436b, supra, provides: " 'Mercury' as that term is used herein means the common mineral known by that term *not in combination with any other liquid, fluid or mineral.*"

vide for probation and revocation proceedings as a part of its criminal process anymore than it is required to provide for appellate review, but when it does, then due process and equal protection of the law is fully applicable thereto. Douglas v. People of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. See Hoffman v. State, 404 P.2d 644 (Alaska); People v. Price, 24 Ill.App.2d 364, 164 N. E.2d 528; Williams v. Commonwealth, 350 Mass. 732, 216 N.E.2d 779; Blea v. Cox, 75 N.M. 265, 403 P.2d 701. See also this writer's original dissent in Crawford v. State, Tex.Cr.App., 435 S.W.2d 148. Cf. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620.

And certainly now it is well established that revocation of probation hearings are a part of the criminal law process "where substantial rights of a criminal accused may be affected" and to which federal constitutional standards are applicable. Mempa v. Rhay, 389 U. S. 128, 88 S. Ct. 254, 19 L.Ed.2d 336; McConnell v. Rhay and Stiltner v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2; Crawford v. State, supra; Eiland v. State, Tex.Cr.App. 437 S.W.2d 551.

The majority has today diluted the standards applicable to revocation proceedings and I regret the extension of the rule first announced in Dunn to a case where the uncorroborated accomplice witness' testimony does not make out a complete case and there is no other evidence, direct or circumstantial to connect the probationer with the alleged violation. While the accomplice's testimony may not leave the appellant free from the suspicion of guilt, it fails to show his guilt to a moral certainty so as to exclude all reasonable doubt. And this is so because where the accomplice witness' testimony does not make out a complete case the rule of circumstantial evidence is still applicable.

While there is no right to either the court's or the jury's grace, once granted,

probation should not be arbitrarily withdrawn by the court and the court is not authorized to revoke without having found the probationer has violated conditions of his probation. Wozencraft v. State, Tex. Cr.App., 388 S.W.2d 426. The burden of proof is upon the State, Zane v. State, Tex.Cr.App., 420 S.W.2d 953.

Believing that such burden has not been sustained and that the court abused its discretion in revoking probation, I dissent.