COMMONWEALTH *vs.* JOSEPH DRUKEN.

Suffolk. November 5, 1969. — December 22, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Mentally Ill Person. Constitutional Law,* Equal protection of laws, Mentally ill person. *Words,* "May."

After the defendant in a criminal case pending in the Superior Court had been temporarily committed to a mental institution for observation under G. L. c. 123, § 100, and a report had been made to that court that he was insane, a commitment of him to a mental institution under

§ 105 without affording him the procedural safeguards required by §§ 51, 53, for a civil commitment would deny him the equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution.'

MOTION for commitment filed in the Superior Court on September 25, 1968.

The case was heard by *Rose*, J.

*Reuben Goodman* for the defendant.

*Paul V. Buckley,* Assistant District Attorney (*John M. Lynch, III,* Legal Assistant to the District Attorney, with him), for the Commonwealth.

SPALDING, J. On April 10, 1968, the defendant was convicted in a District Court on a complaint charging an attempt to break and enter in the nighttime and was sentenced to two years in a house of correction. He appealed to the Superior Court. Following a report of a psychiatric examination of the defendant, a judge of the Superior Court on May 21, 1968, committed the defendant to the Bridgewater State Hospital (Bridgewater) under G. L. c. 123, § 100, as appearing in St. 1956, c. 589, § 7, "pending a determination as to any mental illness." Thereafter, the defendant was recommitted for two further thirty-five day observation periods.

On September 25, 1968, the Commonwealth, by reason of a report of the acting medical director of Bridgewater, made a motion requesting a hearing to determine whether the defendant should be committed as an insane person under G. L. c. 123, § 105. The defendant filed a motion to dismiss, an answer in abatement, and an answer in bar, all of which were denied, subject to the defendant's exceptions. The defendant also presented requests for rulings, some of which were denied, subject to the defendant's exceptions. One of the grounds common to the motions, answers, and requests is that the defendant's commitment pursuant to § 105 is a violation of his rights under the equal protection clause of the Fourteenth Amendment. This point was raised in the defendant's second request for ruling, which was denied. Since a determination of this question is dis-

positive of the case, we shall deal with the request rather than the motion to dismiss and answers in abatement and in bar.

The basic question is whether a person charged with a crime who is committed for observation to determine his mental state prior to trial, pursuant to §§ 100 and 105, can then be committed to a mental institution under § 105 on a report that he is insane, without the procedural safeguards of G. L. c. 123, §§ 51 and 53.

When the mental competency of a person under complaint or indictment for any crime is in doubt, a court at any time prior to trial, hearing, or sentence may commit him to a State hospital (including Bridgewater) "for his proper care or observation pending a determination as to any mental illness." C. 123, § 100. The commitment under § 100, however, is limited by the provisions of § 105. Section 105, as appearing in St. 1965, c. 80, limits the observation period to thirty-five days and requires the return of the prisoner to the penal institution from which he was first taken, unless the prisoner is found to be insane. In the case of a finding of insanity, a report of the prisoner's mental condition is to be made to the "court or judge issuing the warrant or commitment . . . with the recommendation that the prisoner be committed as an insane person." The court may then commit the prisoner to an institution for the insane if such commitment is deemed necessary.

Unless the provisions for commitment under § 105 involve application of the safeguards found in §§ 51 and 53, the procedures under § 105 and under §§ 51 and 53 would be substantially different. Section 51 requires certification of mental illness by two physicians. There are limitations under § 53 on the period of time allowed to elapse between the physician's examination of a person and the making of oath to the certificate, and between certification and the commitment. Under § 53, also, the certifying physicians can hold no office or appointment, other than that of consulting or advisory physician, in the institution

to which the person is committed, and where practicable, at least one of the two physicians making the certificate shall be a diplomate in psychiatry of the American Board of Psychiatry and Neurology, Incorporated (American Board). Section 51A (inserted by St. 1967, c. 619, § 1) provides that in the case of any person where a commitment to Bridge-water is found to be necessary, there must be a review of his mental status within sixty days and periodic review thereafter, with notice to be given to the person confined and his nearest relative or guardian. No such explicit provisions appear in § 105 standing alone.

In the present case, the defendant was certified as mentally ill only by one physician, Dr. Samuel Allen. This physician also happened to be the acting medical director of the hospital to which the defendant was committed. Furthermore, he was not a diplomate in psychiatry of the American Board. Since the judge specifically ruled that the commitment of the defendant was pursuant to § 105, rather than § 51A, the review provisions of § 51A were held not to be applicable.

The defendant contends that the more restrictive safe-guards of §§ 51 and 53, rather than the procedure of § 105, apply to defendant's commitment as (1) a matter of statutory interpretation and (2) as a constitutional right under art. 12 of the Declaration of Rights of the Massachusetts Constitution and the Fourteenth Amendment of the United States Constitution.

1. Section 51, as amended through St. 1959, c. 215, § 6, provides that in any commitment under §§ 100 and 105, where a person is before the court in connection with a criminal matter, "the court *may* commit the person to a mental institution in accordance with the provisions of said sections and this section . . ." (emphasis supplied). The use of the word "may," even if not construed as making §§ 51 and 53 procedures mandatory in a § 105 commitment, at least empowers a court to employ the former procedure if it so chooses.

The defendant, however, contends that § 51A, enacted in

1967 as the result of a message from the Governor (June 6, 1967, House Doc. No. 4918) to cure illegalities in the confinement of persons at Bridgewater, applies the safeguards of §§ 51 and 53 to his commitment to Bridgewater. We think it unnecessary to decide this issue, for in any event, the circumstances of this defendant require that, to hold him further at Bridgewater, he must be committed in a manner consistent with §§ 51, 51A and 53. This result is necessary either (a) on the principle that § 105 must be construed as incorporating, as applied to this defendant, not convicted of any crime, the safeguards of §§ 51, 51A and 53, to avoid constitutional doubts (see *Rohrer, petitioner,* 353 Mass. 282, 284–286), or (b) on the ground that, to apply § 105 to this defendant without incorporating the safeguards applicable to all other inhabitants not convicted of crime, would deny him the equal protection of the law.

2. On either ground of decision, a determinative consideration is whether the equal protection requirement of the Fourteenth Amendment, as stated in *Baxstrom* v. *Herold, State Hosp. Director,* 383 U. S. 107, permits the Commonwealth to treat differently, for the purposes of determining mental illness and appropriate care, a person who has been committed for observation pursuant to §§ 100 and 105, from one committed under §§ 51 and 53.

In the *Baxstrom* case the court held that differences in the commitment procedures of a person whose prison term had expired and one who was not in prison when determined to be mentally ill were obnoxious to the equal protection clause. Nonprisoners were entitled to a de novo review by jury trial on the question of their sanity, after an initial determination by a court that their mental state required care and treatment in an institution for the mentally ill. A prisoner, however, was not allowed jury review. The court held that, having made this review procedure generally available, the State could not, consistent with the equal protection clause, arbitrarily withhold it from some. To the State's contention that a differentiation of the civilly insane from the criminally insane was a reasonable classification, the court

answered that while it "may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given . . . it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill *at all*." 383 U. S. 107, 111. Thus for the purposes of granting jury review on the question of mental illness and need of commitment to an institution, "there was no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." 383 U. S. at 111–112.

This holding has been subsequently applied to the mandatory commitment provisions applicable upon a successful plea of not guilty by reason of insanity. *Cameron, Superintendent, St. Elizabeths Hosp.* v. *Mullen*, 387 F. 2d 193 (Ct. App. D. C.). *Bolton* v. *Harris, Acting Superintendent of St. Elizabeths Hosp.* 395 F. 2d 642 (Ct. App. D. C.), and *People* v. *Lally*, 19 N. Y. 2d 27, held that prior criminal conduct and the greater likelihood that those acquitted by reason of insanity will be dangerous to society were not sufficient justifications for procedures substantially different from those accorded civil commitments.

Similarly, in the circumstances leading to the commitment of the defendant here, we are unable to perceive any justification for treating him differently from a person who is committed with all the safeguards of §§ 51 and 53. The Commonwealth argues first that such a classification is reasonable because the purpose of a §§ 100 and 105 commitment is significantly different from that of a §§ 51 and 53 commitment. According to this reasoning, a §§ 100 and 105 commitment is solely to determine competency to stand trial, and does not involve the indefinite commitment pending recovery which arises in a §§ 51 and 53 commitment. We need not consider what differences in procedure between a thirty-five day commitment for observation and other commitments are constitutionally permissible, for that issue is not before us. Rather, the question is whether, at the end of such a commitment for observation, a court may decide, without the procedural safeguards of §§ 51 and 53, that a

person's mental condition warrants commitment to some institution. The decision to be made by a judge under § 105, once the prisoner's insanity has been reported to the court, is not whether he is competent to stand trial, but whether commitment to an institution is necessary. The superintendent of the hospital, or the commissioner of mental health and medical director, dispose of the question of competency to stand trial in their report that a prisoner is insane. The Commonwealth's contention that such a § 105 commitment is significantly different from one under §§ 51 and 53 is therefore without merit. Indeed, the Commonwealth recognizes that repeated commitments under § 105 might in fact become the equivalent of an ordinary civil commitment, but only in those circumstances when the criminal charges are dropped, or a person has been committed for a longer period than he would if actually tried and convicted.

We think it clear that the equivalent of a civil commitment occurs even in the absence of those qualifying circumstances. In each case a person is committed to a mental institution because his mental health requires it. That different consequences will flow from recovery of his mental health in § 105 commitments is not relevant in determining the appropriate procedure for commitment. We hold that such a classification that denies the safeguards of §§ 51 and 53 solely because a person, not convicted of any crime, was first committed for observation under §§ 100 and 105 would be arbitrary and repugnant to the equal protection clause of the Fourteenth Amendment. It follows that the denial of the defendant's second request for ruling was error.

3. The case is to stand in the Superior Court for further proceedings consistent with this opinion, which may include commitment proceedings incorporating the safeguards of §§ 51, 51A, and 53.

*Exceptions sustained.*