NoRMAisr L. Harvey, J.
The petitioner, Larry Slofsky, seeks a determination of this court declaring the policy of the New York State Board of Parole, that denies parole consideration to inmates of Dannemora State Hospital, to be unconstitutional as violative of the Fourteenth Amendment to the United States Constitution. Such determination is sought by way of a writ of habeas corpus issued by this court under date of September 2, 1971.
The petitioner was arrested on March 16, 1963 and charged with homicide. On May 27, 1963 he was convicted of manslaughter in the first degree, sentenced to an indefinite term of from 10 to 20 years, and has been confined to various institutions ever since.
On March 17, 1970, the petitioner appeared before the New York State Parole Board for the first time. He has appeared on four subsequent occasions, the last of which was on May 18, 1971. On three occasions the petitioner appeared before the New York State Board of Parole while confined to the Dannemora State Hospital. On the other two occasions he appeared within six months of his release from the Dannemora State Hospital and his return to Clinton Correctional Facility. The minutes clearly indicate that the sole reason for denial of parole was his confinement to Dannemora State Hospital, either at the time of the hearing or immediately prior thereto.
On October 14,1971, the court heard proof presented on behalf of the petitioner’s contention. It was the uncontradicted testimony of Senior Parole Officer James Williams that it is the policy of the New York State Board of Parole that no inmate at Dannemora State Hospital will be considered for parole while he remains an inmate of that hospital. It is also the policy of the New York State Board of Parole that, upon return to a non-hospital facility, no inmate will be considered for parole for a period of six months. Parole Officer Williams also testified that to the best of his knowledge no one has ever been paroled directly from the Dannemora State Hospital.
No such policy exists with respect to prison inmates suffering from physical disability as distinguished from a mental disability. A prison inmate suffering from an illness such as *130 tuberculosis or diabetes may be paroled and, if need be, paroled to a civil hospital for the treatment of his physical illness. Self sufficiency is not a .requirement of parole.
The respondent Dr. Paul Agnew, Director of Dannemora State Hospital and a qualified psychiatrist, also testified. His testimony was uncontradicted and was the only medical testimony presented to this court.
Dr. Agnew was very familiar with the petitioner’s condition because he knew him and was in charge of his treatment at all times while petitioner was a patient at the hospital. In his opinion, the petitioner is still mentally ill and continues to require some type of institutional treatment. However, it is his opinion that the petitioner has no assaultive or violent tendencies. Petitioner’s present treatment consists of small dosages of a tranquilizer drug and the protective and understanding atmosphere of the hospital. The doctor recommended that the petitioner be paroled to a civilian mental hospital. It was his opinion that the petitioner would respond to this transfer with increased confidence in his doctors and an acceptance of the fact that he is mentally ill and does require treatment. Once that stage of recovery is reached, it is probable that only outpatient hospital care would be required. The doctor anticipated that the proposed parole and civilian hospital treatment would bring about complete recovery.
Dr. Agnew also spoke at length about the general problems of parole and! conditional release of patients at Dannemora. At the time of the hearing, there were 335 patients at his hospital who were suffering from varying types and degrees of mental illness. Some suffer from very serious and incurable mental illness. These patients are kept under control so they do no harm to themselves or fellow patients, but little else can be accomplished other than to provide them with food and shelter. Others have illnesses less disturbing which can be cured, and an active program exists to attain those results.
The director stated that there are a substantial number of patients at his hospital who could be paroled safely for their own betterment and for the betterment of others. Some should be paroled to a civilian mental hospital and some could be paroled to their homes with the requirement that their illnesses be treated on an outpatient basis at an appropriate mental health clinic. He firmly believes that by doing so the chances for complete recovery on the part of each would be greatly enhanced. The doctor also stated his belief that such a policy would make it possible for him and his staff to treat the remaining patients *131 in Ms hospital more effectively because they would co-operate more fully with his program.
Neither the Commissioner of Correction nor the Parole Board, itself, offered any explanation or justification for its policy. Obviously, the Parole Board has the authority and the responsibility to adopt policy consistent with the Correction Law of the State of New York and with any other law of the State or the United States applying to all people. Those policies and the decisions based thereon are not reviewable by this court if they are in accordance with law. ‘ ‘ Any action taken by the board pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law. ’ ’ (Correction Law, § 212, subd. 10; Matter of Hines v. State Bd. of Parole, 293 N. Y. 254.)
On the other hand, and quite obviously, any policy or decision of the Parole Board which denies an inmate equal protection of the law, as guaranteed by the Fourteenth Amendment, is reviewable by this court and this court has the authority to direct compliance with the Constitution.
That the equal protection clause of the Constitution applies to this petitioner is unmistakable. 1 ‘ Although it is true that ‘ [1] awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system, ’ it is well established that prisoners do not lose all their constitutional rights and that the Due Process and Equal Protection Clauses of the Fourteenth Amendment follow them into prison and protect them there from unconstitutional action on the part of prison authorities carried out under color of state law. Cooper v. Pate, 378 U. S. 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1965) ; Cochran v. State of Kansas, 316 U. S. 255, 62 S. Ct. 1068, 86 L. Ed. 1453 (1942); Sewell v. Pegelow, 291 F. 2d 196 (4th Cir. 1961); Pierce v. LaVallee, 293 F. 2d 233 (2d Cir. 1961), and Fulwood v. Clemmer, 111 U. S. App. D. C. 184, 295 F. 2d 171 (1963).” Washington v. Lee, 263 F. Supp. 327, 331, affd. Per Curiam, 390 U. S. 333.)
The board’s policy is admitted. It has created a classification of persons and has denied those persons the benefit of parole. The task of the court is to determine whether their policy is a rational policy or whether it constitutes an invidious discrimination against a particular class. ‘1 While a State has broad power when it comes to making classifications (Ferguson v. Skrupa, 372 U. S. 726, 732), it may not draw a line which constitutes an invidious discrimination against a particular class. *132 See Skinner v. Oklahoma, 316 U. S. 535, 541-542. Though the test has 'been variously stated, the end result is whether the line drawn is a rational one. See Morey v. Doud, 354 U. S. 457, 465-466.” (Levy v. Louisiana, 391 U. S. 68, 71.)
Three relatively recent decisions concerning inmates of Dannemora State Hospital not only give this court clear guidance but also foster a greater insight into the nature and extent of the problem.
° For a number of years, decisions which were primarily administrative in nature determined whether an inmate in a correctional facility should be transferred to Dannemora State Hospital and whether he should remain there. The practice of retaining inmates in the hospital beyond the expiration dates of their maximum sentences became commonplace. In Baxstrom v. Herold (383 U. S. 107) proceedings took place in Surrogate’s Court immediately prior to the termination of the inmate’s sentence and it was determined that he continued to require mental care and treatment. Both the hospital and the inmate desired that the patient be cared for in a civilian mental hospital. However, prior to that proceeding the State Mental Hygiene Department had decided ex parte that the patient should remain at Dannemora. The Surrogate concluded that he was powerless to direct otherwise. The United States Supreme Court decided that the petitioner was being denied equal protection of the law in that he was denied procedural rights granted to civilians. He was also denied equal protection because he was retained in a Correction Department hospital without a judicial proceeding determining that he was so dangerously mentally ill that his presence in a civil hospital would be dangerous to the safety of other patients or employees, or to the community. Civilians were entitled to said proceedings.
In directing remedial procedures, the court stated: “ Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.” (383 U. S. 107, 111).
Another case in which it was determined that inmates at Dannemora 'State Hospital were denied protection equal to that afforded their civilian counterparts was United States ex rel. Schuster v. Herold (410 F. 2d 1071). Following that decision the New York State Legislature amended the Correction Law to provide for periodic review and jury -trials to determine whether or not an inmate is mentally ill. The statute is substantially identical to the provision in the Mental Hygiene Law applicable to commitment to a civil hospital.
*133 A more recent case has determined, that inmates of Dannemora State Hospital have been denied protection equal to that of inmates in other correctional facilities in their applications for postconviction remedies. In People v. Aponte (28 N Y 2d 343) the N. Y. Supreme Court denied, without prejudice, a coram nobis application of an inmate of Dannemora State Hospital in supposed compliance with People v. Booth (17 N Y 2d 681). The theory for denial was that an inmate of Dannemora State Hospital is incompetent to participate in legal proceedings. The Court of Appeals established a procedure to make an initial determination of the inmate’s competency to continue the proceedings. In doing so, the court recognized that a possibility existed that not all patients at Dannemora are incompetent.
The court concludes that no rational basis exists for drawing a line where it was drawn by the Parole Board. There are patients at Dannemora Hospital who are ill but who are not behavior problems. They have as great a desire to get out from behind prison bars as do their counterparts in the other correctional facilities. Fortunately, the medical profession looks upon these people as patients in every sense of the word. They suffer involuntarily from illnesses which can be diagnosed and treated. We have learned that mental illness is commonplace and that it should not invoke shame.
Neither should the past attitude of the State Mental Hygiene Department deter the granting of parole of mentally ill patients from the correctional system to civil hospitals. Following the Baxstrom decision (383 U. S. 107, supra), the Correction Department transferred 992 patients, whose penal terms had expired but were retained at Dannemora or Matteawan as dangerously mentally ill patients, to civil institutions. Of those 992 patients, only 6 were returned to correctional hospitals. (See Morris, The Confusion of Confinement Syndrome: An Analysis of the Confinement of Mentally 111 Criminals and Ex-Criminals by the Department of Correction of the State of New York, 17 Buffalo L. Rev. 651 [1968].)
Parole should not be uniformly denied to all Dannemora patients for the sole reason that some patients might be poor parole risks. Transcripts of the five parole hearings conducted in petitioner’s case reveal no other reason for denying parole to this petitioner. Neither was any reason introduced at the hearing in these proceedings. It is clear that the respondents accept the premise that, if the board’s policy of denying consideration to all inmates of Dannemora Hospital is a deprivation of petitioner’s constitutional rights, Slofsky should be paroled to a civil mental hospital.
*134 The court concludes that the decision of the Parole Board at the May 18, 1971 hearing is invalid, for the reason that the petitioner was denied his right of equal protection under the law as guaranteed by the Fourteenth Amendment of the Constitution. The court further concludes that the Parole Board should he directed to take appropriate measures immediately to parole the petitioner to a civil mental hospital.