Bernard Dubin, J.
Must a criminal defendant who has been denied conversion to civil patient status (Jackson v Indiana, 406 US 715) be given a de novo hearing pursuant to section 31.35 of the Mental Hygiene Law in order to protect his right to equal protection of the law under the Fourteenth Amendment of the United States Constitution? The facts which give rise to this issue are as follows.
Defendant Arthur Arendes was indicted for murder in the first degree on May 14, 1964 (Former Penal Law, § 1044). He was hospitalized as incompetent to stand trial at Matteawan State Hospital and remained there until his transfer to Creedmoor State Hospital in December, 1973. Since then Arendes has been hospitalized at Creedmoor pursuant to orders of retention signed by various Justices of this court (CPL 730.50). At his last court appearance defendant moved pursuant to Jackson v Indiana (406 US 715) to be converted to civil patient status on the ground that he would not regain the competence to stand trial in the foreseeable future. After a hearing at which expert psychiatric testimony was taken, the court (Mr. Justice Agresta) issued an order denying Jackson relief. Defendant now moves for a hearing de novo only as to that portion of the order which denied him conversion to civil patient status. It is defendant’s contention that he must be allowed a rehearing on the issue before a different Judge since that right is granted to civil patients hospitalized against their wishes (Mental Hygiene Law, § 31.35) and denial to him of a rehearing will abridge his right to equal protection of the law. In support of his claim defendant relies on several cases worthy of discussion.
In Baxstrom v Herold (383 US 107), the United States Supreme Court held that a prisoner who is allegedly mentally *470 ill is entitled to the same procedural safeguards as are available to nonprisoners whom the State seeks to civilly commit to mental institutions. The court reasoned that the question of mental illness in the first instance must be determined in the same way for all and that question differs from the type of treatment to be given prisoners who have been found to be mentally ill. The court also found section 384 of the Correction Law violative of equal protection in that it allowed commitment of prisoners nearing the expiration of their sentence to a Department of Correction hospital (rather than to a Department of Mental Hygiene institution) under standards that did not include the procedural guarantees available to civil patients whom the State sought to commit to Department of Correction hospitals. In short, Baxstrom (supra) held that the rights available in the civil commitment process must be extended to prisoners where the issues to be determined, mental illness and dangerousness, are similar for all persons and have nothing to do with the fact of incarceration. The same criteria must be applied by psychiatrists to determine if a person is mentally ill or dangerous regardless of whether that person is an inmate of a jail or a civilian on the street.
The New York Court of Appeals thereafter applied Baxstrom (supra) to the predecessor section of CPL 330.20 (Code Crim. Pro., § 454) in People v Lally (19 NY2d 27). In effect the court held that a man who, following his acquittal by reason of insanity and commitment to the Commissioner of Mental Hygiene, petitioned for discharge on the grounds that he was no longer insane or dangerous must be afforded the same rights as are available in the civil commitment scheme of the Mental Hygiene Law, including a jury trial on certain issues. Again, it must be noted that where the issue in the first instance is mental illness itself or dangerousness, there is no valid ground to distinguish between a civilian and a prisoner since the issues have no connection to the circumstance of incarceration and the same psychiatric criteria will apply to all people to determine mental illness.
The disparity in treatment between prisoners and nonprisoners was once more raised in United States ex rel. Schuster v Herold (410 F2d 1071, cert den 396 US 847). At issue was the validity of section 383 of the Correction Law which provided for the transfer of a prisoner who had become mentally ill to an institution maintained by the Department of Correction for the criminally insane. The transfer could be effected *471 by a certificate signed by one doctor. No judicial review was authorized. Although both institutions, the one from which and the one to which a prisoner was sent, were under the jurisdiction of the Correction Department, the transfer was not merely administrative. As a practical matter an inmate of the facility for the insane, Dannemora, was not considered for parole while he was mentally ill.
The United States Court of Appeals for the Second Circuit held that a prisoner must be given the same procedural rights as are given to nonprisoners since the issue, mental illness, is irrelevant to the fact of imprisonment. Drawing heavily upon both Baxstrom (supra) and Lally (supra), the court found no rational basis for treating prisoners differently from other allegedly mentally ill persons where the fact to be determined was unrelated to the fact of incarceration. In conclusion, the Second Circuit Court of Appeals ordered a new hearing with all the procedural rights given noncriminals who are subject to involuntary commitment to civil hospitals.
Three years later a Federal action was commenced pursuant to subdivision (3) of section 1343, section 2201 and section 2202 of title 28 of the United States Code by indicted but untried defendants in Matteawan State Hospital who claimed that CPL article 730 and its predecessor, section 662-b of the Code of Criminal Procedure, were unconstitutional because those statutes failed to provide for a jury trial on the issue of dangerousness for prisoners in their class while civil patients could contest the question of dangerousness before a jury (Mental Hygiene Law, § 85) as could prisoners charged with a crime but not indicated (Code Crim. Pro., § 872).
In Gomez v Miller (341 F Supp 323, affd 412 US 914), the United States District Court for the Southern District of New York (Lasker, J.) held that there was no valid reason for singling out those in the plaintiff class (CPL 730.60, subd [1]) while others in the criminal process were afforded the same type of review as civil patients (see CPL 730.70, subd 2; 330.20, subd 6; 730.50, subd 1; 730.50 [1] and 730.60, subd 3). The question of whether a defendant in the plaintiff class is dangerous as well as mentally ill deserves the same consideration given the question where a civil commitment is sought. To deprive plaintiffs the procedural safeguard of a jury trial amounted to a denial of equal protection.
The trilogy of Federal cases might best be summed up by the following: 'Baxstrom thus might be said to require the *472 conclusion that, while prior criminal conduct is relevant to the determination whether a person is mentally ill and dangerous, it cannot justify denial of procedural safeguards for that determination. "(Schuster, 410 F2d 1071, 1081, citing Cameron v Mullen, 387 F2d 193, 201.)
Gomez (supra) was followed in People v Sera (71 Misc 2d 46) where the court read into CPL 730.50, the right to rehearing and jury review which the Mental Hygiene Law guarantees to civil patients and in People v Metesky (71 Misc 2d 519), where the right to a de novo review of a finding of dangerousness was read into CPL 730.70, in order to afford defendant the same procedural safeguards as a civil patient would have.
Finally, in People v Decker (42 AD2d 857), the procedural review of the Mental Hygiene Law for civil commitment was extended to CPL 730.50, by the Appellate Division in the Second Judicial Department which cited Sera (supra) and Gomez (supra).
The foregoing cases lead to the conclusion that the equal protection clause of the Fourteenth Amendment guarantees those in the criminal process the same rights as civil patients where the issue to be determined, mental illness or dangerousness, is not dependent upon the fact of incarceration or criminality. The courts extended the procedural protections of the Mental Hygiene Law to the CPL and Correction Law since there was no basis to differentiate the issues as they applied to those whom the State sought to civilly commit from the issues as they applied to those who were part of the criminal justice process.
The instant case however is readily distinguishable from the cases relied upon by defendant. In the cited cases the courts compared the statutes before them to civil commitment statutes and found the former lacked the procedural protections of the civil statutes. The courts further found that no foundation existed for treating the criminal defendants differently from civil patients and struck down the offending statutes. Here, there are no criminal statutes which lack the procedural safeguards of a comparable civil proceeding. Jackson relief is a creature of decisional law. It has no statutory counterpart in the civil law. To argue that a defendant must be given the civil patient type of de novo review after a Jackson hearing is to compare apples to oranges. Quite simply, there is no statute to accuse of failing to equal its civil commitment counterpart.
*473 Moreover, Jackson issues are so far removed from anything involved in civil commitment that a comparison is meaningless. In those cases where the courts found that criminal patients were denied protection given civil patients, there was a unity of issue that gave rise to the claim of unequal treatment. The issues were either mental illness itself or dangerousness. Both civilly committed persons and those against whom criminal charges were pending were alléged to be mentally ill or dangerous or both. The problem was that the civil patients and the criminal patients were being treated differently for no valid reason since the same psychiatric criteria applied to each group to determine mental illness or dangerousness. The Jackson question does not concern itself strictly with mental illness or dangerousness but rather requires the determination of whether a defendant will regain the capacity to stand trial in the foreseeable future. That question is unique to the criminal justice system. There is no similar civil proceeding and therefore no civil statute which might be equally applied to a criminal defendant. That which is before a court in a Jackson hearing is a hybrid issue without parallel in civil commitment. The fact of a pending criminal charge, alleged mental illness and capacity to stand trial currently and in the foreseeable future are the mixtures which converge before a Hearing Judge and they form a unique blend unknown to the civil law and therefore unaffected by it. Where a new type of hearing has been created by decisional law and the issues involved are unique, it can serve no legitimate purpose to apply to that criminal hearing the review procedures of the civil law which were enacted in response to a completely different type of problem.
Furthermore, the proliferation of petitions for rehearing would clog the already overburdened criminal justice system with no concomitant salutary result.
The court concludes that the scope of a Jackson hearing is so unique that defendants who seek relief may be treated differently from civil patients. (Baxstrom, 383 US 107 supra; Walters v City of St. Louis, 347 US 231.) The application for review of Mr. Justice Agresta’s order of December 17, 1975 is denied.