Argued and submitted April 22, affirmed August 3, 1981

ASHLEY,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

(No. 78-108, CA 19432)

632 P2d 15

Susan Longbrook, Portland, argued the cause for petitioner. With her on the brief was King & Longbrook, Portland.

Elise (Lisa) C. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner appeals an order of the Psychiatric Security Review Board (PSRB). The questions presented for our consideration are: (1) whether ORS 161.346(9), which provides that the standard of proof at PSRB hearings is by a preponderance of the evidence, violates petitioner's federal constitutional rights to due process and equal protection of the laws;[1] and (2) whether there is substantial evidence in the record to support PSRB's determination that, at the time of the hearing in question, petitioner presented a substantial danger to herself or others. We affirm.

In 1977 petitioner was found not guilty of murder in the first degree by reason of mental disease or defect. The trial court, after conducting a hearing pursuant to former ORS 161.325,[2] found petitioner was affected by a mental disease or defect, presented a substantial danger to herself or others and was not a proper subject for release on supervision. The trial court ordered her committed to a state mental institution, as provided in former ORS 161.340(1).[3]

---

[1] Amendment XIV to the United States Constitution provides, in pertinent part:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[2] Former ORS 161.325 provided:

"After entry of judgment of not guilty by reason of mental disease or defect excluding responsibility, the court shall, on the basis of the evidence given at the trial or at a separate hearing, if requested by either party, make an order as provided in ORS 161.329, 161.335 or 161.340, whichever is appropriate."

[3] Former ORS 161.340(1) provided:

"If the court finds that the person is affected by mental disease or defect and presents a substantial risk of danger to himself or the person of others and that he is not a proper subject for release on supervision, the court shall order him committed to a state mental hospital designated by the Mental Health Division for custody, care and treatment."

On September 19, 1980, PSRB[4] conducted the hearing involved in this appeal to determine whether petitioner should be discharged. ORS 161.341(6).[5] At that hearing, the state had the burden to prove by a preponderance of the evidence that she continued to be affected by a mental disease or defect and continued to be a substantial danger to herself or others in order to justify her continued commitment. ORS 161.351(2).[6] PSRB determined that the state had carried its burden and declined to discharge her. PSRB concluded, however, that she could be adequately controlled with supervision and treatment if she were conditionally released. *See* ORS 161.346(1)(b).[7]

We first examine petitioner's constitutional claims. Petitioner argues that the statutory standard of proof required in the hearing before PSRB violated her federal constitutional rights to due process and equal protection of the laws because the statutory standard authorizes her continued confinement on a lesser standard of

---

[4] Jurisdiction over petitioner was automatically transferred to PSRB on January 1, 1978. Or Laws 1977, ch 380, § 22.

[5] Petitioner had an initial hearing before PSRB on September 25, 1978. ORS 161.341(6), in pertinent part, provides:

"* * * In no case shall a person be held pursuant to this section for a period of time exceeding two years without a hearing before the board to determine whether the person should be conditionally released or discharged."

[6] ORS 161.351(2) provides:

"For purposes of this section, a person affected by a mental disease or defect in a state of remission is considered to have a mental disease or defect. A person whose mental disease or defect may, with reasonable medical probability, occasionally become active and when it becomes active will render him a danger to himself or others, shall not be discharged. The state has the burden of proving by a preponderance of the evidence that the person continues to be affected by mental disease or defect and he continues to be a substantial danger to himself or others. The person shall continue under such supervision and treatment as the board deems necessary to protect the person and others."

[7] ORS 161.346(1)(b) provides:

"If the board finds that the person is still affected by a mental disease or defect and is a substantial danger to himself or others, but can be controlled adequately if he is conditionally released with treatment as a condition of release, the board shall order him conditionally released as provided in ORS 161.336."

proof than that required in civil commitment proceedings. *See* ORS 426.307.[8]

■     Analysis of petitioner's due process and equal protection claims is somewhat intertwined. In civil commitment proceedings, due process requires a minimum standard of proof by clear and convincing evidence. *Addington v. Texas,* 441 US 418, 99 S Ct 1804, 60 L Ed 2d 323 (1979). Equal Protection analysis requires us to determine if there are material distinctions between civil commitment proceedings and proceedings for the continued commitment of insanity acquittees which would justify rejection of the *Addington* rationale relative to the latter group. We must also determine if due process requires a greater burden of proof than provided in ORS 161.346(9), independent of any comparison between the two types of proceedings.

■ ■     Petitioner argues that, as an insanity acquittee, she stands in no different position than an individual who faces involuntary commitment in a civil commitment proceeding. She argues that because the inquiry is the same in each proceeding, *i.e.,* the person must be determined to be mentally ill and a danger to himself or others and, thus, the proceedings should involve the same standard of proof. She contends the rationale of *Addington* should apply equally to an insanity acquittee.

In *Addington* the Supreme Court said:

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' * * * The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." 441 US at 423.

The court stated that a person facing civil commitment has an interest in not being confined and not being stigmatized

---

[8] ORS 426.307, in pertinent part, provides:

"* * * If in the opinion of the court the individual is still a mentally ill person by clear and convincing evidence and in need of further treatment, the court may order his commitment to the division for an additional indefinite period of time up to 180 days. * * *"

by an official finding that he is mentally ill, dangerous and must be committed to a mental institution. These interests were greater, the court concluded, than the interests of the state in involuntarily committing a mentally ill and dangerous person for treatment. Because the individual's interests are greater, he should not be required to share equally with the state the risk of an erroneous decision. The greater risk is allocated to the state, the court said, by requiring it to justify commitment by clear and convincing evidence.

There are material distinctions between the two types of proceedings which justify not imposing the same standard of proof. An insanity acquittee has been found by a trier of fact to have engaged in criminal conduct which has threatened public safety and order. The verdict of not guilty by reason of insanity implies a finding that the conduct charged has been committed, but that the accused is not responsible because of a mental disease. If the crime had not been proven by the state, the verdict should have been not guilty. During the criminal proceedings, the accused urges and proves by a preponderance of the evidence that he is mentally ill and not responsible for the criminal conduct. A civil committee, on the other hand, has not been determined by a factfinder to have committed a criminal act or to have harmed society as a result of a mental illness.

Because an insanity acquittee has been determined, based on his own admissions and evidence, to be mentally ill and not responsible for criminal acts, and during the same proceedings the court has determined that he is dangerous and must be committed, the risks of an erroneous decision before PSRB is substantially reduced. This distinction has been recognized by courts elsewhere to justify different standards. *Baxstrom v. Herold,* 383 US 107, 111, 86 S Ct 760, 15 L Ed 2d 620 (1966); *Lynch v. Overholser,* 369 US 705, 715, 82 S Ct 1063, 8 L Ed 2d 211 (1962); *Warren v. Harvey,* 632 F2d 925, 930 (2d Cir 1980); *United States v. Brown,* 478 F2d 606, 610, 155 ADC 402 (DC Cir 1973); *Bolton v. Harris,* 395 F2d 642, 651, 130 ADC 1 (DC Cir 1968); *State v. Alto,* 589 P2d 402, 406 (Alaska 1979); *Hill v. State,* 358 So2d 190, 200 (Fla App 1978).

The court in *Warren v. Harvey, supra,* in analyzing the distinctions, noted:

> "* * * He [an insanity acquittee] need not be overly protected against the possibility that the factfinder will commit him based on 'a few isolated instances of unusual conduct.' The insanity acquittee already has been found to have committed a criminal act. Furthermore, if an insanity acquittee is committed because of an erroneous determination that he is mentally ill, then the odds are high that he may have been found not guilty on insanity grounds because of a similar erroneous determination that he is not sane. While the acquittee therefore may be deprived erroneously of his liberty in the *commitment* process, the liberty he loses is likely to be liberty which society mistakenly had permitted him to retain in the *criminal* process. Concomitantly, while society derives no benefit from erroneously confining ordinary persons who are not in fact mentally ill and dangerous, the erroneous confinement of an insanity acquittee who in fact was not mentally ill at the time of his crime indirectly benefits society by keeping a 'sane' criminal off the streets.
>
> "Next to the actual deprivation of liberty, the greatest harm to a person erroneously committed to a mental institution is the stigma attached to the commitment. *Addington v. Texas, supra,* 441 U.S. at 426. The harm that such stigma causes an individual provides another cogent reason for 'weighing' the standard of proof scales in favor of the ordinary individual faced with civil commitment. It is hard to view the insanity acquittee with the same solicitude. He already has been found to have committed an unlawful act—with all the attendant stigmatization—and has escaped punishment solely because he convinced the factfinder in the criminal proceeding that there was merit to his claim of insanity. Any stigma resulting from the label 'mentally ill and dangerous' certainly attached at the time the accused was found not guilty by reason of insanity. Additional stigma which might result from subsequent commitment to a mental hospital must be regarded as minimal, if any." 632 F2d at 931-32.

The reasoning set forth in *Warren* is the correct rationale. The considerations respecting civil commitments which prompted the court in *Addington* to hold that due process requires a standard of proof greater than a preponderance of the evidence do not exist to the same degree regarding continued commitment of insanity acquittees.

We conclude therefore that due process does not require a greater standard of proof than a preponderance of the evidence in hearings before PSRB. We also conclude that petitioner is not denied equal protection of the laws because the standard of proof in hearings before PSRB is less than that required for civil commitment of a mentally ill person.

■ Petitioner's final assignment of error is that there was not substantial evidence to support the determination of PSRB that she continued to suffer from a mental illness and was dangerous to herself or others. ORS 183.482(8)(c); ORS 161.385(9)(c). It is unnecessary to detail the evidence presented to PSRB in this proceeding. We conclude that there was substantial evidence to support the order of continued commitment.

Affirmed.