OPINION OF THE COURT
Philip S. Straniere, J.
Claimant, Michael Goldman, commenced this small claims action against the defendant, Viktoriya Fay, alleging that the defendant failed to disclose a leak in the premises claimant purchased from the defendant. Defendant counterclaimed alleging that the claimant’s suit was frivolous. A trial was held on May 5, 2005. Both sides appeared without lawyers.
Claimant testified that the defendant sold him the premises 95 Stonegate Drive, Staten Island, New York, with the closing of title taking place on January 5, 2004. Claimant stated that in July 2004 he noticed a problem with the air-conditioning system. After an inspection it was revealed that the air-conditioning pipe had been cut and left to drain into the wall. This caused water damage to the insulation and the walls which required replacement, cleaning and mold treatment. Claimant submitted paid bills totaling $5,032 for expenses incurred in this regard. Claimant asserts that the defendant knew of the condition or created the condition when she moved. Defendant denies having had any problem and stated that she did nothing to the system when she moved that would have caused the problem. Claimant had a structural inspection done in September 2003 prior to signing the contract to purchase dated September 25, 2003. Claimant did not submit a copy of the structural report, but submitted a letter from the engineer who performed the inspection which states that the report accurately depicted the condition of the premises on the date of the inspection and that the engineer had no knowledge of any changes made after that date.
The court inquired as to whether or not the property condition disclosure form was completed prior to contract as required by article 14 of the Real Property Law (the Property Condition Disclosure Act [PCDA]) or was the $500 credit given. The parties informed the court that the premises was a condominium and therefore was not subject to the statute.
*961 A. Applicability of the Property Condition Disclosure Act.
“Leapin’ Lizards!”
“Good Grief!”
“Great Caesar’s Ghost!”[1]
Lo and behold, the litigants are correct. Real Property Law § 461 (5) excludes from the coverage of the statute “(a) unimproved real property upon which such dwellings are to be constructed, or (b) condominium units or cooperative apartments, or (c) property in a homeowners’ association that is not owned in fee simple by the seller.”
This of course seems simple enough. However, are not condominium units owned in “fee simple” and are not condominium unit owners members of homeowners’ associations? If that is the case, are condominium units covered by the statute or not covered by the statute? In the words of the King of Siam, this “Is a puzzlement.”[2] Since this is a statute designed to protect consumers, if there is a question as to whether the condominium unit is included because it is also part of a homeowners’ association, the law should be interpreted in favor of disclosure.
More to the point, was not this statute drafted as consumer protection legislation to protect the purchasers of “residential real estate” from unscrupulous sellers? Perhaps it would be worthwhile, as opposed to an academic exercise, to see which of the following 48 questions would not be relevant to the purchaser of a condominium or a cooperative. The statute (Real Property Law § 462 [2]) requires a seller to answer the following questions.
1. How long have you owned the property?
2. How long have you occupied the property?
3. What is the age of the structure or structures? Note to buyer — if the structure was built before 1978 you are encouraged to investigate for the presence of lead-based paint.
4. Does anybody other than yourself have a lease, easement or any other right to use or occupy any part of your property other than those stated in documents available in the public record, such as rights to use a road or path or cut trees or crops?
5. Does anybody else claim to own any part of your property?
6. Has anyone denied you access to the property or made a formal legal claim challenging your title to the property?
*962 7. Are there any features of the property shared in common with adjoining landowners or a homeowners’ association, such as walls, fences, or driveways?
8. Are there any electrical or gas utility surcharges for line extensions, special assessments or homeowner or other association fees that apply to the property?
9. Are there certificates of occupancy related to the property?
10. Is any or all of the property located in a designated flood plain?
11. Is any or all of the property located in a designated wetland?
12. Is the property located in an agricultural district?
13. Was the property ever the site of a landfill?
14. Are there or have there ever been fuel storage tanks above or below the ground on the property?
15. Is there asbestos in the structure?
16. Is lead plumbing present?
17. Has a radon test been done?
18. Has motor fuel, motor oil, home heating fuel, lubricating oil or any other petroleum product, methane gas, or any hazardous or toxic substance spilled, leaked or otherwise been released on the property or from the property onto any other property?
19. Has the property been tested for the presence of motor fuel, motor oil, home heating fuel, lubricating oil, or any other petroleum product, methane gas, or any hazardous or toxic substance?
20. Is there any rot or water damage to the structure or structures?
21. Is there any fire or smoke damage to the structure or structures?
22. Is there any termite, insect, rodent or pest infestation or damage?
23. Has the property been tested for termite, insect, rodent or pest infestation or damage?
24. What is the type of roof/roof covering (slate, asphalt, other)? Any known material defects? How old is the roof? Is there a transferable warrantee on the roof in effect now?
25. Are there any known material defects in any of the following structural systems: footings, beams, girders, lintels, columns or partitions?
26. What is the water source (circle all that apply — well, private, municipal, other)? If municipal, is it metered?
*963 27. Has the water quality and/or flow rate been tested?
28. What is the type of sewage system (circle all that apply— public sewer, private sewer, septic or cesspool)? If septic or cesspool, age? Date last pumped? Frequency of pumping? Any known material defects?
29. Who is your electric service provider? What is the amperage? Does it have circuit breakers or fuses? Private or public poles? Any known material defects?
30. Are there any flooding, drainage or grading problems that resulted in standing water on any portion of the property?
31. Does the basement have seepage that results in standing water?
Are there any known material defects in any of the following:
32. Plumbing system?
33. Security system?
34. Carbon monoxide detector?
35. Smoke detector?
36. Fire sprinkler system?
37. Sump pump?
38. Foundation/slab?
39. Interior walls/ceilings?
40. Exterior walls or siding?
41. Floors?
42. Chimney/fireplace or stove?
43. Patio/deck?
44. Driveway?
45. Air-conditioner?
46. Heating system?
47. Hot water heater?
48. The property is located in the following school district.
To quote a line from an old Harry Belafonte song, “It was clear as mud” why condominiums and cooperatives are excluded from the statute. Certainly the purchaser of either of those types of units would not want that information and clearly it would be an oppressive burden on the seller to complete the form and provide the requested information especially when the choices are often “yes,” “no,” “unknown,” or “not applicable.” Considering condominium and cooperative ownership do not exist at common law and are creatures of statute it certainly would be an uncalled for extension of legislative oversight to *964 foist the PCDA requirement on condominium and cooperative transactions.[3]
What is really puzzling is that when the “legislative findings”' used to form a justification for the passage of the statute are read, it is clear that there is no rational basis for the exclusion of condominiums and cooperatives. The findings are as follows:
“The legislature hereby finds and declares that residential real estate consumers, both buyers and sellers would benefit from a mechanism intended to increase their ability to obtain information concerning a home purchase and sale. The legislature recognizes that home ownership sales are often complicated by misunderstandings arising from an ad hoc transfer process and conflicting information. A uniform document that regularizes disclosure can supplement information provided by professional inspections and tests to provide sellers and buyers with a better basis for negotiating a purchase and sales agreement. A uniform disclosure statement will alert both buyers and sellers to aspects of properties which may require attention: environmental, structural, mechanical or other potential problem areas, particularly those not readily observable by a visual inspection of the property.” (L 2001, ch 456, §1.)
It may be argued that much of the information requested in the PCDA is not under the control of the seller since that portion of the premises may have to be maintained by the condominium or cooperative corporation. Such an argument is a “red herring” at best since the purpose of the disclosure is to provide information to the prospective purchaser. What difference does it make who is responsible for repairing the defective condition? What is important is informing the purchaser of the condition and negotiating to have it corrected or deciding to purchase with that knowledge. In fact, it could be argued that such disclosures are more relevant in condominium and cooperative sales since the purchaser may be buying a unit with a problem and have no redress against the seller since the condition is not the responsibility of the seller but of a third party. There is no justification to remove sellers and purchasers of condominiums *965 and cooperatives from the definition of a “residential real estate consumer.”
An analysis of the legislative purposes for the PCDA leads to the question of whether the statute as written creates a serious equal protection problem in that the intent of the statute is to protect “residential real estate consumers” and the law as written eliminates a large portion of that statutorily identified group without setting forth a rational basis for doing so.
“It is unnecessary to say that the ‘equal protection of the laws’ required by the Fourteenth Amendment does not prevent the states from resorting to classification for the purposes of legislation . . . But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.”[4]
“Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.”[5]
It cannot be denied that condominiums are residential real estate transactions since the owner of a unit receives a deed (Real Property Law art 9-B) and that although cooperative ownership involves the purchase of shares in a corporation, such units are considered de jure real estate transactions subject to both New York State and City real estate transfer tax return filings and payment and include a leasehold interest with the issuance of the proprietary lease to the owner of the unit. The purchasers of these units do so to use the unit for residential purposes. As such it is clear that the current statutory scheme violates equal protection. The Legislature can differentiate between different classes of real estate ownership for certain purposes; however, there is no explanation in the statute as to why condominiums and cooperatives are excluded from coverage. In fact, condominiums that include an interest in a homeowners’ association may be covered under the language of the statute. To exclude these types of real estate from the protection of the statute or conversely to include other types of ownership only requires a rational basis; no such rational basis is *966 included in the statute or easily discernible upon a reasonable reading of the statute.
It is clear that the current statute is unconstitutional as written and its application should be stayed pending the Legislature amending the current language so as to include all residential real estate transactions. Unfortunately, this court does not have the jurisdiction to stay enforcement. It is hoped that the Legislature will act to correct the infirmities of the law or abolish it entirely and require the licensing of structural engineers with the recommendation that all purchasers have such an inspection done prior to the purchase of residential real property. Unless the legislation is remedied, the situation will remain, and to paraphrase George Orwell, “all residential real estate consumers are equal, but some residential real estate consumers are more equal than others.”[6]
B. Claimant’s Prima Facie Case.
In order to prevail on this matter, the claimant has the burden of proving that the defendant had either actual or constructive knowledge of the condition or created the condition. Claimant had a structural engineer inspect the premises in September 2003 before entering into the contract of sale later that month. Although the engineer’s report is not part of the record, the contract is and that does not contain any amendments to the agreement indicating that there were any items that needed repairs. The claimant went into title on January 5, 2004. He claims he did not discover the problem until July 5, 2004, seven months later. There is no independent evidence that the defective condition was caused by the defendant or that the condition existed prior to defendant moving. Claimant also testified that he did a walk-through inspection before closing title and did not discover any problems. He asserts that when the defendant removed the washer and dryer, she also disconnected the condenser hose. Claimant cannot explain why he did not discover the problem for seven months and if he installed his own washer and dryer, why he did not discover the problem at that time.
Claimant needed an expert to testify as to the cause of the problem; he had no such expert testimony. Without independent testimony it would require speculation by the court to conclude that the defendant caused the problem or had knowledge of it before the closing.
*967 In addition, although claimant incurred expenses for repairs to the premises, none of the repairs were done by a licensed home improvement contractor. The type of repairs the claimant had done to the premises qualifies as a home improvement and was required to be performed by a licensed home improvement contractor (General Business Law art 36-A; 6 RCNY 2-221 et seq.). It would violate public policy to permit a claimant to be reimbursed for work done by an unlicensed contractor. So even if the claimant established the liability of the defendant, claimant cannot prevail on his damage claim.
C. Defendant’s Counterclaim.
Defendant has filed a counterclaim. There is no evidence that the defendant has suffered any damages. Defendant’s counterclaim is dismissed on the merits.
Conclusion.
Claimant’s cause of action is dismissed on the merits.
Defendant’s counterclaim is dismissed on the merits.
The fact that article 14 of the Real Property Law excludes units in condominiums and cooperatives violates equal protection of the law and renders the current statute unconstitutional. The court calls on the Legislature to either repeal the current law or stay its execution until the defects can be remedied.

. Remarks made by Little Orphan Annie, Charlie Brown and Perry White, respectively, and accepted by the court as accurately depicting the legislative decision to exclude these homeowners from this consumer protection law.

. Words of King Mongkut, Rodgers and Hammerstein, A Puzzlement, in The King and I.

. Please note that the above paragraph is an example of judicial sarcasm and is considered poor drafting in most quarters. It is being used solely for effect and should not be an endorsement of a practice that would probably keep me from getting tenure.

. F. S. Royster Guano Co. v Virginia, 253 US 412, 415 (1920).

. Baxstrom v Herold, 383 US 107, 111 (1966).

. The quote from George Orwell’s Animal Farm (ch 10) is “All animals are equal, but some animals are more equal than others.”