Jeremy MCKLEMURRY, Individually and By and Through George Douglas RAYBORN and Bobbie N. Rayborn, as Next Friends, Plaintiffs,

v.

Dr. Albert Randel HENDRIX, Individually and in his official capacity as Executive Director, Department of Mental Health, Defendant.

Civil Action No. 3:96CV519LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

May 23, 1997.

Shirley Payne, Horn & Payne, Jackson, MS, for Plaintiffs.

Rickey T. Moore, Office of the Attorney General, Jackson, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendant Dr. Albert Randel Hendrix to dismiss or, in the alternative, for summary judgment. Plaintiff Jeremy McKlemurry has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

In 1996, Jeremy McKlemurry was convicted of possessing crystal methamphetamine and sentenced to three years on probation. On April 23, 1996, while on probation, he was arrested on a warrant for probation revocation and incarcerated in the Copiah County Detention Center for an alleged violation of the terms of his probation, namely, possession of beer. While in jail awaiting a probation revocation hearing, Jeremy, who had a long history of mental illness and depression[1] and who had one or more previous admissions to the Mississippi State Hospital at Whitfield, twice attempted suicide.[2] His grandparents, plaintiffs George Douglas Rayborn and Bobbie N. Rayborn, had apprised jail officials of Jeremy's mental illness, and insisted that Jeremy be taken to a doctor. However, according to plaintiffs, following an interview by a member of the Region 8 Mental Health–Retardation Commission staff, Jeremy was ruled ineligible for services because of his incarceration. His grandparents also instituted civil commitment proceedings in the Copiah County Chancery Court, but the chancellor dismissed their petition for commitment upon finding he lacked jurisdiction due to Jeremy's incarceration. Plaintiffs thus filed a motion in circuit court, where his criminal case was pending, for a mental evaluation. But while that motion was pending, Jeremy made his second suicide attempt. Thus, on July 10, immediately following Jeremy's second suicide attempt and while his claim for evaluation and treatment was pending before the circuit court, plaintiffs filed this lawsuit against Copiah County Sheriff Frank Ainsworth, the Region 8 Mental Health–Retardation Commission and its executive director and members, and against Dr. Hendrix, individually and in his capacity as Executive Director of the Mississippi Department of Mental Health, alleging a violation of Jeremy's due process and equal protection rights resulting from the alleged denial of adequate medical and psychiatric care during his incarceration in the Copiah County facility, and charging additionally a violation of the

---

1. The complaint alleges that Jeremy, who was 25 years old when arrested, had first been treated by mental health professionals for depression at the age of 10.

2. First, on the night he was arrested, Jeremy tried to hang himself and approximately three months later, in early July, he again attempted suicide by ingesting prescription drugs that he had gotten from another inmate.

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and finally, asserting that Miss. Code Ann. § 41–21–63(2), which prevents plaintiff from being civilly committed while incarcerated, violates his due process and equal protection rights and operates as a bill of attainder in violation of the United States Constitution. Thereafter, at a hearing before the Copiah County Circuit Court on the petition for revocation of Jeremy's probation, the judge ordered Jeremy's probation revoked. Jeremy had admitted to the court, through counsel, that he had possessed beer and that this was in violation of the conditions of his probation, yet he urged the court not to incarcerate Jeremy but to order him committed to the State Hospital at Whitfield for treatment. However, the judge, while of the opinion that Jeremy was obviously a danger to himself and in need of psychiatric treatment, concluded that under the state's commitment laws, he lacked the jurisdiction to order Jeremy committed to the state hospital.[3] Accordingly, he declined the request to commit Jeremy for treatment and instead, ordered that Jeremy be immediately provided "psychological and psychiatric evaluation, counseling and any other treatment that is possible or available through the Mississippi Department of Corrections."

Following the revocation of his probation, Jeremy was transferred to the Mississippi State Penitentiary at Parchman, here he is currently incarcerated and receiving psychiatric treatment under the auspices of the Mississippi Department of Corrections. In light of his transfer to Parchman, plaintiffs, who had requested in this action only injunctive and declaratory relief, entered a Rule 41 stipulation of dismissal as to the Copiah County sheriff and the Region 8 Mental Health–Retardation Commission defendants, presumably for the reason that the claims against those defendants had become moot.

However, plaintiffs have continued to pursue their claims against Dr. Hendrix.

By his present motion, Dr. Hendrix now seeks dismissal of plaintiffs' claims, arguing that any claim they might have had against him is moot because Jeremy is now eligible to receive (and is receiving) from the Mississippi Department of Corrections psychiatric care for his mental illness, and because the sole responsibility for providing Jeremy with mental health services while he was incarcerated in the Copiah County Detention Center was vested in Copiah County and *not the Department of Mental Health*, which had no authority or control over whether or what services Jeremy then received.

The Mississippi Department of Mental Health (DMH), established pursuant to Miss. Code Ann. § 41–4–1, *et seq.*, operates two psychiatric hospitals in the state.[4] While the DMH is authorized to accept voluntary admissions to these facilities, because of its policy of according priority to court-ordered admissions and due to space limitations, from a practical standpoint, admission is only available by court order.[5] In this regard, admission by court order is limited to involuntary civil commitment ordered by a chancery court or admission of a criminal defendant ordered by a circuit court for the purpose of determining his competency to stand trial and/or his competency or sanity at the time of the alleged crime. The criminal defendants, though, are not admitted for treatment but rather may only be admitted to the forensic service unit of one of these hospitals for the sole purpose of having their competency evaluated.[6] And the state statutes which prescribe the procedures for civil commitment preclude civil commitment in a state hospital for persons with "unresolved criminal charges pending" against them.

3. Jeremy had been evaluated at the state hospital and found competent to participate in the revocation proceedings and found not to meet the criteria for insanity at the time of his offense.

4. In addition, it operates five residential facilities for mentally retarded persons.

5. This is because the demand for services is greater than the facilities available.

6. This is with one notable exception: The circuit courts are authorized to order a person to the care of the DMH if he has been found by a grand jury or jury to be not guilty of a crime by reason of insanity or if he is found to be "feeble minded." *See* Miss. Code Ann. §§ 99–13–5 and 99–13–7.

Miss.Code Ann. § 41–21–63 (Supp.1996).[7] Thus, the only avenue for admission to a state hospital for treatment of mental illness is via civil commitment proceedings, and by statute, that avenue is closed to persons with "unresolved criminal charges pending" against them.

At the time he was incarcerated in the Copiah County Detention Center prior to the revocation of his probation, Jeremy had "unresolved criminal charges pending" against him. Consequently, despite what many obviously perceived as his need for psychiatric treatment, he was ineligible for civil commitment to a state hospital and, according to plaintiffs, was likewise determined by the Region 8 Mental Health–Retardation Center to be ineligible for treatment because of the charges that were pending against him. Plaintiff complains, therefore, that by implementing Mississippi's civil commitment statute, § 41–21–63 (Supp. 1996), the DMH violated his rights to equal protection and procedural due process by arbitrarily denying him access to the process for civil commitment which the state makes available to persons who do not have unresolved criminal charges against them. He further maintains that the failure to allow civil commitment of persons subject to "unresolved criminal charges" constitutes discrimination against them on account of their mental disability in violation of the ADA. In other words, as the court comprehends it, plaintiffs' claim, in a nutshell, is that Jeremy's rights to equal protection and due process are violated by Miss. Code Ann. § 41–21–63 because no state court has jurisdiction to order hospitalization in one of the DMH's state psychiatric facilities, of a person who has criminal charges pending against him even though that person otherwise meets the statutorily prescribed criteria for civil commitment, i.e., poses a danger to himself or others. *See* Miss. Code Ann. § 41–21–61.

In his motion to dismiss, Dr. Hendrix contends first that the claims against him are due to be dismissed because they are moot now that Jeremy is at Parchman and receiving treatment for his mental illness. In fact, plaintiffs filed this action requesting only declaratory and injunctive relief based on Jeremy's ineligibility for civil commitment due to the pendency of the petition for revocation, i.e., unresolved criminal charges, and it would seem, therefore, that there is merit in defendant's mootness argument, at least as it relates to plaintiffs' equal protection and due process claims. Plaintiffs argue, though, that these claims are not moot because Jeremy, having been treated and jailed as a criminal rather than receiving civil commitment to a state hospital, cannot receive the follow-up care and prescription drug care from the DMH after his release from the criminal system that would have been available to him as a releasee from the State Hospital at Whitfield; and, the argument continues, since he cannot control his depression without these services and continued medication, then his condition is one that is capable of repetition, yet would evade review since the challenged statute remains unchanged. *See Southern Pacific Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (establishing "capable of repetition yet evading review" exception to mootness doctrine). This argument overlooks two critical facts, however. First, even though Jeremy may not be eligible for *follow-up* services from the DMH upon his release from Parchman, he nevertheless will be eligible for the mental health services which are available through DMH, without limitation, since at that time he will have no unresolved criminal charges pending against him. Indeed, if his condition warrants it, upon his release from Parchman, he will be eligible for civil commitment to a state hospital.[8] Second, as plaintiffs clearly recognize, the only factor which has obstruct-

7. Miss. Code Ann. § 41–21–63 (Supp.1996) states: "The chancery court, or the chancellor in vacation shall have jurisdiction under Sections 41–21–61 through 41–21–107 except over persons with unresolved criminal charges pending."

8. In fact, even though there may be no specific provision for this under state law, the court is aware of nothing that would prevent civil commitment proceedings from being commenced prior to the expiration of Jeremy's prison sentence so that he may be transferred directly to the State Hospital from Parchman when he has completed serving his sentence.

ed Jeremy's access to the civil commitment process provided by state statute is the pendency of "unresolved criminal charges." And while it is no doubt possible that Jeremy might in the future become involved in criminal activity and thus again be in the position of having "unresolved criminal charges pending" against him, there is no basis in the record for predicting that he will. The court thus perceives no valid basis for concluding that the factual scenario which precipitated this litigation is likely to recur. Consequently, it follows that plaintiffs' claims against Dr. Hendrix for equal protection and due process violations should be dismissed as moot.

■ But even were those claims not moot, the court would still view dismissal as appropriate since as a matter of law, the claims lack merit. Plaintiffs' due process claim, as the court understands it, is in part, that Jeremy was entitled to notice and a hearing *so that he could be committed to the state hospital at Whitfield.* As their sole support for this claim, plaintiffs rely on *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), which they contend stands for the proposition that the Due Process Clause attaches to commitment proceedings even when a prisoner is already in state custody. In *Vitek,* the Court did hold that a convicted felon serving his sentence has a liberty interest, not extinguished by his confinement as a criminal, in not being transferred to a mental institution and hence classified as mentally ill without appropriate procedures to prove that he was mentally ill since "[t]he loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement." *Vitek,* 445 U.S. at 492, 100 S.Ct. at 1263; *see also Foucha v. Louisiana,* 504 U.S. 71, 78, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992); *Jones v. United States,* 463 U.S. 354, 361, 103 S.Ct. 3043, 3048, 77 L.Ed.2d 694 (1983) ("commitment for any purpose constitutes a significant deprivation of liberty that re-

quires due process protection"); *Jackson v. Foti,* 670 F.2d 516 (5th Cir.1982) (due process requires a hearing prior to commitment to a mental institution). In other words, *Vitek* recognized a liberty interest in *not being committed* to a mental institution, a situation quite inapposite to that confronting Jeremy. Clearly under *Vitek,* if the state had sought to commit Jeremy to a state mental institution, then it could not have done so without providing him notice and a hearing—equivalent safeguards to those which attend the involuntary commitment of persons who are not serving a criminal sentence. But *Vitek* cannot be read as requiring, on due process grounds or otherwise, that a state make its civil commitment processes available to those who have been charged with or convicted of crimes.

■ Though it is not altogether clear, plaintiffs also appear to assert that Jeremy's due process rights were violated by his having been charged and jailed in the first place on a revocation warrant rather than simply being committed for mental treatment since the offense ascribed to Jeremy by law enforcement officials—the possession of beer— was in Jeremy's case not so much a criminal offense as it was a manifestation of his depression (in that he was apparently self-medicating his depression). Plaintiffs thus argue that because law enforcement officials who make the decision "as to what charge to use in holding a mentally ill prisoner" are not trained mental health professionals, they may act arbitrarily and incarcerate someone whose conduct, rather than being truly criminal, is really symptomatic of mental illness. They submit then, that allowing the judgment of these law enforcement officers to potentially preempt that of trained mental health professionals so as to deprive those mentally ill persons of needed treatment offends the Due Process Clause.[9] Plaintiffs' position is without merit. Manifestly, it does

---

9. Plaintiffs argue that because DMH trained its personnel that persons with criminal charges against them could not be provided treatment by DMH, then no mental health evaluation or treatment could be provided to Jeremy while he was at the Copiah County Detention Center. They contend, therefore, that DMH "abdicated any treatment responsibilities and the decision was

left solely up to the law enforcement officers as to what labels to apply or what statutory procedures to follow." And, they say, "[o]nce the jail personnel chose to hold Mr. McKlemurry under 'unresolved criminal charges' he could not be evaluated as a mental patient in need of civil commitment for hospital care."

not violate due process for law enforcement officers to arrest, charge and incarcerate someone who has committed a criminal offense just because the person who committed that offense is mentally ill. Unless it is demonstrated that the person charged with a crime meets the criteria for insanity, the law does not excuse criminal conduct on the ground that the person who committed the act is mentally ill. And plaintiffs do not dispute that Mississippi law provides a process for evaluating criminal defendants' sanity at the time of the charged offense.

The fact of the matter is, regardless of his motivation, Jeremy's possession of alcohol did constitute a violation of the terms of his probation. That Jeremy was suffering from a mental illness which may have contributed to his probation violation does not detract from the fact that *this was a violation for which he could validly and properly be charged and jailed.*[10] And the fact that law enforcement officials made the decision to arrest and hold Jeremy did not violate his right to due process.[11]

■ Plaintiffs maintain that their equal protection claim is controlled by *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), which, they say, holds that refusing civil commitment and civil treatment for prisoners violates the equal protection clause. This court, however, does not read *Baxstrom* nearly so broadly. The *Baxstrom* case involved a convicted criminal who was serving his prison sentence at a state hospital run by the state's Department of Corrections for mentally ill prisoners. Near the end of his prison sentence, a judicial proceeding was held at which the state presented evidence that Baxstrom was still mentally ill and in need of mental care and treatment in an institution for the mentally ill. Although there was no objection to his being transferred to a civil hospital run by the state's Department of Mental Hygiene, the judge concluded that by virtue of the state statute governing the procedure for civil commitment upon the expiration of the prison term of mentally ill persons, he had no jurisdiction to commit Baxstrom to a civil institution. The Court concluded that the state's statutes operated to deny Baxstrom equal protection because they provided less procedural protections in connection with civil commitments of prisoners at the expiration of a penal sentence than for other persons civilly committed, and set a lower standard for the commitment of persons nearing the expiration of a prison term. *Id.* at 110, 86 S.Ct. at 762. In the Supreme Court's view, for purposes of defining the procedures employed to determine whether a person was mentally ill and in need of institutionalization, "there [was] no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." *Id.* at 111, 86 S.Ct. at 763. Indeed, "[t]he capriciousness of the classification employed by the State was thrown sharply into focus by the fact that" the higher standard for civil commitment applied to persons who had past criminal records whereas the lower standard applied to those who were about to complete their prison terms (and thus about to have merely a past criminal record). *Id.*

It is manifest to this court that the Supreme Court in *Baxstrom* did not hold that a

---

**10.** Plaintiffs do not dispute that Jeremy's probation was conditioned upon his abstaining from the use of alcohol and Jeremy conceded at the probation revocation hearing that he had violated that condition. For these reasons, plaintiffs' objection that § 41–21–63 constitute. an unlawful bill of attainder fails.

**11.** Plaintiffs also argue that the officials who arrested Jeremy were the "investigators of his behavior, were the officers who determined that his sentence would be under criminal penalties, to the State penitentiary at Parchman, rather than to a treatment facility or the State Hospital at Whitfield," and they conclude that these officials' "involvement in the investigation and the

charges makes them biased and incompetent to serve as an impartial magistrate." In fact, however, the decision whether to revoke Jeremy's probation and maintain his incarceration was made not by law enforcement personnel, but rather by the circuit judge who, it is noted, was not required to revoke Jeremy's probation and who therefore could have elected to deny the revocation petition despite Jeremy's probation violation if he thought that was warranted by Jeremy's condition. *See* Miss. Code Ann. § 47–7–37 (Supp.1996) ("court shall have the authority, after a hearing, to continue or revoke all or any part of probation or all or any part of the suspension of sentence").

state cannot refuse civil commitment and civil treatment for prisoners without violating the equal protection clause. Rather, the Court held only that consistent with Baxstrom's right to equal protection, he could only be civilly committed *after he had completed serving his penal sentence* if the state committed him in accordance with the procedures and standards applicable to all other civil commitments. The Court clearly did not hold that a convicted prisoner or a person facing criminal charges is entitled to be civilly committed.[12]

The Court specifically recognized in *Baxstrom*, that "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." 383 U.S. at 111–12, 86 S.Ct. at 762–63. *See also Jackson v. Indiana*, 406 U.S. 715, 729, 92 S.Ct. 1845, 1853, 32 L.Ed.2d 435 (1972) (statutory commitment scheme should be invalidated only if there was no "reasonable justification" for it); *United States v. Jackson*, 553 F.2d 109, 120 (1976) (commitment statute must be upheld if there is rational basis for scheme it creates). The pertinent inquiry, then, is, for purposes of determining the nature of mental health services that will be made available, is there a rational basis for distinguishing between those against whom criminal charges are pending and those who either have no such charges pending or whose charges have been resolved. And in the court's opinion, there is certainly a rational basis for separating those in the criminal justice system from others for mental health services.

■ While the challenged statute does preclude civil commitment to a state psychiatric hospital of those charged with crimes, it does not proscribe the provision of treatment, psychiatric or otherwise, for persons charged with crimes. Thus, the statute did not preclude Copiah County from providing Jeremy with treatment for his mental illness. In this vein, it must be emphasized that the responsibility for providing such treatment to Jeremy was not that of the DMH but rather was Copiah County's duty.[13] *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (recognizing right of pretrial detainees to reasonable medical treatment); *Hare v. City of Corinth*, 74 F.3d 633, 642 (5th Cir.1996) (reasonable medical care includes psychiatric care and treatment); *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182 (5th Cir.1986) (same). Neither the statute challenged by plaintiffs nor DMH as a matter of policy precluded Copiah County from fulfilling this constitutionally-mandated obligation to provide Jeremy McKlemurry with needed treatment for his mental illness. Thus, DMH, which has no responsibility for nor authority with regard to the care and treatment of pretrial detainees, cannot be held accountable for any failure on the part of Copiah County to have provided Jeremy with psychiatric treatment. And though this issue is now moot, the court would note with respect to Copiah County's duty, that while commitment to a state mental hospital may have been the best and hence preferred method by which to meet Jeremy's needs, it by no means follows from the fact that this was not available that there was any violation of Jeremy's constitutional rights. *See Wolfish*, 441 U.S. at 542 n. 25, 99 S.Ct. at 1876 n. 25 ("Government action does not have to be the only alternative or even the best alternative for it to be reasonable, to say nothing of constitutional.").

■ In addition to his equal protection and due process claims, plaintiff has asserted a cause of action under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* Plaintiffs characterize their position on this claim as follows:

The fact that a mentally ill person is denied an examination that can consider his

---

12. In fact, Baxstrom claimed that he was sane and should not be committed at all, but that if he was to be committed after he had already served his prison sentence, then he was entitled to be considered for commitment by the same procedures and on the same terms as any other non-prisoner would be.

13. Upon the revocation of probation, the offender is "placed in the legal custody of the State Department of Corrections," which at that point becomes responsible to provide him with treatment, including psychiatric treatment, for his serious medical needs. Miss. Code Ann. § 46–7–37 (Supp.1996).

mental illness, once criminal charges have been lodged against him, but a person who is not mentally ill can receive a full Chancery Court examination of the possibility of his need for civil commitment, is an inequity and inequality in the law that is brought about by reason of a person's disabled status.

The fallacy of plaintiffs' reasoning is apparent: Jeremy was not denied access to a mental evaluation or civil commitment because of his mental illness, i.e., his disabled status. He was denied eligibility for civil commitment solely because of the pendency of criminal charges against him. Plaintiffs have no viable claim under the ADA.

Based on the foregoing, it is ordered that defendant's motion to dismiss or, in the alternative, for summary judgment is granted, and plaintiffs' cross-motion for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.